IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

2005 APR 12 PM 4: 46

OFFICE OF THE CLERK

JOHN L. LOTTER, )
                       )
         Petitioner, )
                       )
     v. )
                       )
FRED BRITTEN, Warden, )
Tecumseh State Correctional )
Center, )
                       )
         Respondent. )

Case No. 4:04-CV-3187

AMENDED PETITION
FOR WRIT OF HABEAS CORPUS

A.       <u>Present Place of Confinement</u>

       Tecumseh State Correctional Center
       P.O. Box 900
       Tecumseh, NE 68450

B.       <u>Name and Location of Court Which Entered Judgment Under Attack</u>

       Richardson County District Court
       Falls City, Nebraska

C.       <u>Date of Judgment of Conviction</u>

       February 21, 1996 (modified February 29, 1996)

D.       <u>Length of Sentences</u>

       First Degree Murder (Three Counts): Death
       Burglary (One Count): 80 months to 20 years
       Use of a Weapon to Commit a Felony (Three Counts): 80 months to 20 years

E.       <u>Nature of Offenses Involved (All Counts)</u>

       First Degree Murder (Three Counts) in Case No. 2682
       Burglary (One Count) in Case No. 2683
       Use of a Weapon to Commit a Felony (Three Counts) in Case No. 2684

F.       <u>What Was Your Plea? (Check One)</u>

L0640972.2

| (a) | Not Guilty | ( | X | ) - All Counts |
| (b) | Guilty | ( | | ) |
| (c) | Nolo Contendere | ( | | ) |

G.  If you entered a plea of guilty to one count, and a plea of not guilty to another count please give the details.

Not applicable.

H.  Kind of Trial: (Check One)

| (a) | Jury | ( | X | ) |
| (b) | Judge only | ( | X | ) |

Petitioner received a jury trial during the guilt phase of the proceedings. Petitioner was denied a jury trial at the sentencing phase of the proceedings, which were conducted by a three judge panel that made all findings regarding the existence of aggravating and mitigating circumstances and that determined the sentence that was imposed.

I.  Did you testify at trial?

Yes.

J.  Did you appeal the judgment of conviction?

Yes.

K.  If the answer to 10 is YES, please answer the following:

(a)  Name of the court to which you appealed: Nebraska Supreme Court

(b)  Result:

The convictions and sentences of death were affirmed. The terms of imprisonment on the charges that Petitioner used a weapon to commit a felony were affirmed. The sentence for burglary was merged with the convictions for first-degree murder and vacated.

(c)     Date of result (and citation if known):

On November 6, 1998, the Nebraska Supreme Court affirmed the judgments of conviction, vacated the sentence for burglary, affirmed the sentences for use of a weapon, and affirmed the sentences of death. *State v. Lotter*, 255 Neb. 456, 586 N.W.2d 591 (1998). Petitioner filed a timely motion for rehearing with the Nebraska Supreme Court. On January 8, 1999, the Nebraska Supreme Court denied the motion for rehearing and modified its earlier opinion. *State v. Lotter*, 255 Neb. 889, 587 N.W.2d 673(1999).

(d)     Grounds raised on appeal:

*Petitioner attempted to raise the following issues in his original brief to the Nebraska Supreme Court, but the court rejected the brief because of length:*

A.     The trial court erred in denying Petitioner's motion to quash the amended information in violation of Neb. Const. art. I, § 10 and the Sixth and Fourteenth Amendments to the United States Constitution, based upon one or more of the following specifics:

1.     The amended information improperly joined pre-meditated murder and felony murder in a single count that did not require the jury to unanimously agree on the facts supporting either premeditated murder or felony murder in violation of Petitioner's rights under the Neb. Const. art. I, § 11, the Sixth and Fourteenth Amendments to the United States Constitution, and the analysis suggested by *Schad v. Arizona*, 501 U.S. 624, 111 S. Ct. 2491 (1991).

2.     The amended information charged Petitioner with three counts of the capital offense of felony murder under Neb. Rev. Stat. § 28-303(2) (Reissue 1995) and failed to allege an "intent to kill" in violation of Petitioner's rights under the Neb. Const. art. I, § 3, the Eighth and Fourteenth Amendments to the United States Constitution, and the decision in *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368 (1982).

B.     There was plain error in the selection of the jury, where the panel as a whole and the individual jurors actually empaneled at Petitioner's trial were aware that Petitioner's co-defendant had previously been tried and convicted of the crime of murder, in violation of Petitioner's rights under Neb. Const. art. I, § 11 and the Sixth and Fourteenth Amendments to the United States Constitution.

C.     The trial court erred in denying Petitioner's motion to prohibit jury dispersal and to sequester the jury, when the trial court had already found massive and prejudicial publicity that required drawing the jury pool from Douglas County in violation of Petitioner's rights under <u>Neb. Const.</u> art. I, § 11 and the Sixth and Fourteenth Amendments to the United States Constitution.

D.     The trial court erred in denying Petitioner's motion to continue the trial when the State disclosed, fifteen minutes before opening statements, that it "might" have an agreement with the co-defendant to testify. At that time, Petitioner's trial counsel moved to continue and the motion was denied. The trial court again erred in denying Petitioner's motion to continue when the State called Petitioner's co-defendant to testify and the co-defendant's deposition, taken the night before, had not yet been provided to Petitioner's trial counsel. The motions to continue were made prior to the prosecution's providing the co-defendant's written agreement to Petitioner's trial counsel. Additionally, the prosecuting attorney misrepresented the timing and terms of the agreement with the co-defendant. The failure to provide the written agreement and fully disclose the timing and terms of the agreement constituted a violation of Petitioner's rights under <u>Neb. Rev. Stat.</u> § 29-1919(2). The failure to grant Petitioner's motions to continue deprived him of the right to effective assistance of counsel during opening statements and during the trial, in violation of <u>Neb. Const.</u> art. I, §§ 3 & 11 and the Sixth and Fourteenth Amendments to the United States Constitution.

E.     The County Attorney and Special Prosecutor assigned to Petitioner's case committed repeated acts of prejudicial prosecutorial misconduct so as to violate Petitioner's rights to a fair trial and sentence, in violate of the Code of Professional Responsibility, Nebraska statutes, <u>Neb. Const.</u> art. I, §§ 3, 9, 11 & 12, and the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, based on one or more of the following particulars:

        1.     After voir dire and before opening statements, the prosecutors improperly and unethically communicated ex parte with the trial court for the purpose of obtaining assurances from the trial court that it would not convene a three-judge panel for Mr. Nissen's sentencing, that it would not order the preparation of a presentence report that would contain evidence of aggravating factors, and that a life sentence rather than death would be imposed on Mr. Nissen. The purpose of this communication was to induce Mr. Nissen to waive his previously asserted Fifth Amendment right and to testify against Petitioner and caused Mr. Nissen's counsel to withdraw his motion to

quash the subpoena issued for Mr. Nissen. The prosecutors knew, or reasonably should have known, that the ex parte communications and agreement concerned the substance and disposition of both the Motion to Quash filed by Mr. Nissen and the Motion in Limine filed by Petitioner that were pending before the trial court, and the assurances sought and provided by the trial court were in direct violation of the express requirements of <u>Neb. Rev. Stat.</u> § 29-2261(1) (Reissue 1995) which requires that a presentence report "shall" be prepared in the case of a felony conviction, <u>Neb. Rev. Stat.</u> § 29-2520 (Reissue 1995) which requires that only the district court or three-judge panel "shall" determine the sentence to be imposed following a first degree murder conviction and provide no prosecutorial discretion regarding the sentence following trial and conviction of first degree murder, <u>Neb. Rev. Stat.</u> § 29-2521 (Reissue1995) which requires that the court "shall" include matters relating to aggravating circumstances in the determination of the sentence, <u>Neb. Rev. Stat.</u> § 29-2522 (Reissue 1995) which requires that <u>after</u> hearing the evidence the <u>court</u> "shall" fix the sentence at life or death, and <u>Neb. Rev. Stat.</u> § 29-2523 (Reissue 1995) which specifies what "shall" be the aggravating circumstances to be considered by the court. These actions caused the trial court to be a witness under <u>Neb. Rev. Stat.</u> § 27-605 (Reissue 1995) in violation of Petitioner's right to a fair trial and due process of law under <u>Neb. Const.</u> art. I, §§ 3 and 11, separation of powers under <u>Neb. Const.</u> art. II, § 1, and the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

2.     The special prosecutor affirmatively misrepresented to the trial court and to defense counsel on the morning of May 15, 1995, that the agreement with Mr. Nissen to testify was not yet "finalized" in order to obtain a tactical advantage and to force the defense to make an opening statement based upon a circumstantial evidence theory in violation of Petitioner's right to a fair trial and due process of law under <u>Neb. Const.</u> art. I, §§ 3 and 11, and the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

3.     The prosecutors deliberately and intentionally withheld disclosure of the document containing the agreement between the prosecutors, trial court, and Mr. Nissen until after Mr. Nissen had testified and been released from the witness stand in direct violation of a previously entered order by the trial court regarding discovery of documents and disclosure of exculpatory material in violation of Petitioner's rights under <u>Neb. Rev. Stat.</u> §§ 29-1912 *et seq.*, <u>Neb.</u>

*Const.* art. I, §§ 3 and 11, the Sixth and Fourteenth Amendments to the United States Constitution, and the decisions in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963), *Giglio v. United States*, 405 U.S. 150, 87 S.Ct. 793 (1972), and *Kyles v. Whitley*, 115 S.Ct. 1555 (1995).

4.    During opening argument, the special prosecutor violated the trial court's order in limine regarding the alleged sexual assault on Teena Brandon in violation of Petitioner's rights under Neb. Const. art. I, §§ 3 and 11 and the Sixth and Fourteenth Amendments to the United States Constitution.

5.    The special prosecutor affirmatively elicited the "terms" of the agreement between the State and the trial court, the testimony was false and incomplete regarding the true nature of the agreement, the special prosecutor knew or reasonably should have known that the testimony was false and incomplete, and the special prosecutor failed to correct the false and incomplete testimony in violation of Petitioner's rights under Neb. Const. art. I, §§ 3 and 11, the Sixth and Fourteenth Amendments to the United States Constitution, and the decision in *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173 (1959).

6.    The special prosecutor improperly attempted to get obvious and inadmissible evidence before the jury in the form of his questions and statements in violation of Petitioner's rights under Neb. Const. art. I, §§ 3, 11, and 12, and the Sixth and Fourteenth Amendments to the United States Constitution.

7.    During closing argument, the special prosecutor affirmatively misrepresented the law, misstated facts, and improperly appealed to the passions and prejudices of the jury in violation of Petitioner's rights under Neb. Const. art. I, §§ 3 and 11, and the Sixth and Fourteenth Amendments to the United States Constitution.

8.    The special prosecutor used his dual position as an assistant attorney general for the State of Nebraska to intentionally and deliberately circumvent a prior order of the court regarding the confidentiality of certain records in violation of Petitioner's rights under Neb. Const. art. I, §§ 3 and 11, Neb. Const. art. II, § 1, and the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

9.    The cumulative effect of the misconduct by the prosecution at Petitioner's trial and during sentencing violated Petitioner's rights under <u>Neb. Const.</u> art. II, § 1, <u>Neb. Const.</u> art. I, §§ 3 and 11, and the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

F.    The trial court committed judicial misconduct and became a witness in the case when it participated in ex parte and off the record communications with the prosecutor and co-defendant's counsel and provided the essential and necessary assurance to the co-defendant that the co-defendant would not be subject to the death penalty if he testified against Petitioner, in violation of the code of judicial conduct, <u>Neb. Rev. Stat.</u> § 27-605, <u>Neb. Rev. Stat.</u> §§ 29-2519 <em>et seq.</em>, <u>Neb. Rev. Stat.</u> § 29-2261, <u>Neb. Rev. Stat.</u> § 29-2011.02, <u>Neb. Const.</u> art. II, § 1, <u>Neb. Const.</u> art. I, §§ 3, 11, and 13, and <u>Neb. Const.</u> art. V, §§ 9 and 14, the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, and the decisions in <em>In Re Murchison</em>, 349 U.S. 133, 75 S.Ct. 623 (1955) and <em>State v. Barker</em>, 227 Neb. 842, 420 N.W.2d 695 (1988).

G.    The trial court erred in overruling defense objections to certain evidence and exhibits so as to deprive the defendant of a fair trial under <u>Neb. Const.</u> art. I, § 11 and the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

H.    There was "plain error" at trial when inadmissable evidence under the Nebraska Rules of Evidence was received in violation of Petitioner's rights under <u>Neb. Const.</u> art. I, § 11 and the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

I.    The trial court erred when it failed to properly instruct the jury on aiding and abetting, failed to instruct on "intent to kill," failed to instruct the jury that an unanimous verdict was required on the theory of murder, failed to give a curative instruction on the use of Mr. Nissen's prior conviction, and failed to give a proper "reasonable doubt" instruction in violation of petitioner's rights under <u>Neb. Const.</u> art. I, §§ 3 and 11 and the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

J.    Petitioner was denied his right to effective assistance of trial counsel because of court appointed counsel's failure to object to certain inadmissable evidence and to preserve issues for appeal in violation of <u>Neb. Const.</u> art. I, §§ 3, 11, & 12 and the Sixth and Fourteenth Amendments to the United States Constitution.

K.     The trial court and the sentencing panel erred when the death sentences imposed violated Petitioner's rights under the Nebraska death penalty statutes, <u>Neb. Rev. Stat.</u> §§ 29-2519 *et seq.*, <u>Neb. Const.</u> art. II, § I and <u>Neb. Const.</u> art. I, §§ 1, 3, 6, 9, 11 & 13 and the Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution based on one or more of the following specifics:

1.     Petitioner must be sentenced to life because the jury was not unanimous on the theory of guilt, was not required to find whether Petitioner killed or intended to kill, and was not required to make specific findings on aggravating and mitigating factors as required by the <u>Neb. Const.</u> art. I, §§ 1, 3, 6, 9, and 11 and the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

2.     The sentencing panel's preparation of a presentence report and reliance on the trial record in a capital case violated the special mandatory provisions of death penalty statutes, contained information that was irrelevant and unreliable, and involved the trial court in gathering and preparing sentencing information contrary to the death penalty statutes, <u>Neb. Const.</u> art. II, § 1, <u>Neb. Const.</u> art. I, §§ 1, 3, 6, 9, and 11, and the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

3.     The agreement between the co-defendant, Marvin Nissen, the prosecution, and trial court providing that Mr. Nissen would receive a life sentence in exchange for his testimony violated Petitioner's rights under <u>Neb. Rev. Stat.</u> § 27-605 (Reissue 1995), <u>Neb. Rev. Stat.</u> §§ 2-251 (Reissue 1995) *et seq.*, separation of powers under <u>Neb. Const.</u> art. II, § 1, due process and equal protection of the law under <u>Neb. Const.</u> art. I, §§ 1, 3, 9, 11 and the Fifth and Fourteenth Amendments and the right to be free from arbitrary and capricious infliction of cruel and unusual punishment under <u>Neb. Const.</u> art I, § 9 and the Eighth and Fourteenth Amendments to the United States Constitution and the decisions in *In Re Murchison*, 349 U.S. 133, 75 S. Ct. 623 (1955) and *State v. Barker*, 227 Neb. 842, 420 N.W.2d 695(1988).

4.     The Nebraska death penalty statutes, <u>Neb. Rev. Stat.</u> §§ 29-2519 (Reissue 1995) *et seq.*, are unconstitutional on their face and as interpreted by the Nebraska Supreme Court based on one or more of the following specifics:

a.      The death penalty statutes, <u>Neb. Rev. Stat.</u> §§ 29-2519 (Reissue 1995) *et seq.*, are unconstitutionally vague and over broad since persons of common intelligence must guess as to their scope and meaning in violation of Petitioner's right to due process and equal protection under <u>Neb. Const.</u> art. I, § 3 and the Fifth, Sixth, Eighth, and Fourteenth Amendments.

b.      The death penalty statutes, <u>Neb. Rev. Stat.</u> §§ 29-2519 (Reissue 1995) *et seq.*, inflict arbitrary, cruel, and unusual punishment in violation of Petitioner's rights under <u>Neb. Const.</u> art. I, § 9 and the Eighth and Fourteenth Amendments.

c.      <u>Neb. Rev. Stat.</u> § 29-2520 (Reissue 1995) is completely standardless regarding who shall make the sentencing decision (the trial judge or three judge panel), who the Chief Justice shall appoint to a three judge panel, what criteria shall apply to the selection of the three judge panel, whether Petitioner may object or exercise any peremptory challenges to the selection of the panel, and whether the panel must act by unanimous or majority decision. The statutory lack of standards and guidance violated Petitioner's rights under <u>Neb. Const.</u> art. 1, §§ 3, 6, 9, & 11 and the Fifth, Sixth, Eighth and Fourteenth Amendments.

5.      The failure of the Nebraska District Courts and the Nebraska Supreme Court to follow the express statutory requirements regarding procedures for conducting a comparative analysis violates Petitioner's liberty interest, right to due process and equal protection under <u>Neb. Const.</u> art. II, § 1, <u>Neb. Const.</u> art. I, § 3 and the Fifth and Fourteenth Amendments and right to be free from arbitrary and capricious punishment under <u>Neb. Const.</u> art. I, §§ 3 & 9 and the Fifth, Eighth, and Fourteenth Amendments in one or more of the following respects:

a.      The Nebraska Supreme Court unconstitutionally and improperly imposed a limiting interpretation on appellate comparative review of all homicide cases required by the Nebraska death penalty statutes in violation of the separation of powers doctrine under <u>Neb. Const.</u> art. II, § 1 and the Eighth and Fourteenth Amendments to the United States Constitution.

b.    Nebraska county attorneys, clerks of the district courts, and the Clerk of Nebraska Supreme Court are required to follow the statutory mandate of Neb. Rev. Stat. § 29-2521.04 and § 29-2524.04. Their failure to perform this statutory obligation violated Petitioner's right to have all evidence necessary for district court and appellate court proportionality review under Neb. Const. art. I, §§ 3 & 9 and the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

c.    The established Nebraska practice of allowing county attorneys to engage in unfettered bargaining on the sentence to be imposed in first degree murder convictions following either a plea or trial, allowed Petitioner's sentences of death to be imposed in an arbitrary, capricious, and freakish manner and violated his rights under Neb. Const. art. II, § 1, Neb. Const. art. I, §§ 3 & 9 and the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

6.    The death sentences imposed on Petitioner by the sentencing panel violated Petitioner's rights under Neb. Rev. Stat. §§ 29-2519 (Reissue 1995) et seq., Neb. Const. art. I, §§ 1, 3, 6, 9, and 11 and the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution in one or more of the following respects:

a.    The sentencing panel interpreted and applied Neb. Rev. Stat. § 29-2522 (Reissue 1995) in such a manner as to lack standards and direction on the methodology to be used for weighing aggravating and mitigating circumstances and in determining whether the sentence of death was excessive or disproportionate in violation of Petitioner's rights under Neb. Const. art. I, §§ 3, 8 & 9 and the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

b.    The sentencing panel interpreted and applied Neb. Rev. Stat. § 29-2521 (Reissue 1995) and the procedures for imposition of the death penalty in regards to the burden of proof on aggravating factors and the risk of nonproduction and risk of nonpersuasion regarding the existence of statutory and non-statutory mitigating factors in violation of Petitioner's rights under Neb. Const. art. I, §§ 3 & 9 and the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

c.     The finding of the second prong of aggravating circumstance <u>Neb. Rev. Stat.</u> § 29-2523(1)(b) (Reissue1995), "apparent effort to conceal crime/identity," in the deaths of Lisa Lambert and Phillip DeVine was based upon the sentencing panel's incorrect interpretation and application of an unconstitutionally vague and imprecise standard under the Eighth and Fourteenth Amendments to the United States Constitution.

d.     The finding of the second prong of aggravating circumstance <u>Neb. Rev. Stat.</u> § 29.2523(1)(h) (Reissue 1995), "disrupt or hinder the lawful exercise of governmental function/enforcement of the laws," in the death of Teena Brandon was based upon the sentencing panel's incorrect interpretation and application of an unconstitutional standard in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

e.     The sentencing panel's failure to make findings regarding the existence of mitigating factor <u>Neb. Rev. Stat.</u> § 29-523(2)(b) (Reissue1995), "unusual pressures or influences/ domination of another person," was based upon the sentencing panel's incorrect interpretation and application of an unconstitutional standard in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

f.     The sentencing panel's failure to make findings regarding the existence of mitigating factor <u>Neb. Rev. Stat.</u> § 29.2523(2)(c) (Reissue 1995), "extreme mental/emotional disturbance," was based upon the sentencing panel's incorrect interpretation and application of an unconstitutional standard in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

g.     The sentencing panel's failure to make findings regarding the existence of mitigating factor <u>Neb. Rev. Stat.</u> § 29-523(2)(g) (Reissue 1995), "capacity to conform his conduct to requirements of law was impaired as a result of mental illness, mental defect, or intoxication," was based upon the sentencing panel's incorrect interpretation and application of an unconstitutional standard in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

h.    The sentencing panel's failure to find mitigating circumstance <u>Neb. Rev. Stat.</u> § 29-2523(2)(d) (Reissue 1995) was based upon an inaccurate application and interpretation of Nebraska law. The sentencing panel shifted the burden to Petitioner to prove why he should receive the benefit of this circumstance without prior notice to Petitioner of the standard that would be applied in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

i.    The sentencing panel failed to correctly perform the comparative analysis required by the Nebraska death penalty statutes <u>Neb. Rev. Stat.</u> §§ 29-2519 *et seq.* in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

7.    The trial court was without jurisdiction to resentence Petitioner on February 29, 1996, and the sentences imposed violate the Double Jeopardy Clause of <u>Neb. Const.</u> art. I, §§ 3 & 12 and the Fifth and Fourteenth Amendments to the United States Constitution.

8.    Nebraska death penalty statutes are often interpreted and applied for the first time while on appeal to the Nebraska Supreme the Nebraska Supreme Court then makes certain factual findings and engages in "reweighing" so as to deny meaningful appellate review, deny proper notice of the nature of the proceedings and standards that will be applied, deny an opportunity to be heard and have effective representation of counsel at the proceedings, in violation of Petitioner's rights under <u>Neb. Const.</u> art. V, §§ 1 & 9, <u>Neb. Const.</u> art. I, §§ 3, 9, & 23, and the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

9.    Nebraska death penalty statutes and statutes empowering the Board of Pardons under <u>Neb. Const.</u> art. IV, § 13 do not provide for meaningful or fair review since state's chief prosecutor sits on Board of Pardons in violation of Petitioner's rights under the Fifth, Eighth, and Fourteenth Amendments.

10.    The sentences of death are excessive and the Nebraska Supreme Court should exercise its discretion to reduce the sentences to life imprisonment.

*The issues raised in the brief filed on behalf of petitioner by his appointed counsel were as follows:*

A.     The prosecutors and trial court committed misconduct and the trial court became a witness in the case when the trial court participated in ex parte communications with the prosecutors and provided essential and necessary assurances that the co-defendant would not be subject to the death penalty if he testified against Petitioner in violation Petitioner's rights under the Code of Judicial Conduct, Code of Professional Responsibility, Neb. Rev. Stat. § 27-605, Neb. Rev. Stat. § 29-2519 *et seq.*, Neb. Rev. Stat. § 29-2261, Neb. Rev. Stat. § 29-2011.02, Neb. Const. art. I, §§ 3, 11, and 13, art. II, § 1, art. V, §§ 9 and 14, the Fifth, Eighth, and Fourteenth Amendments.

B.     The prosecutors committed repeated acts of prejudicial prosecutorial misconduct in violation of Petitioner's rights to a fair trial and sentencing under Neb. Rev. Stat. § 29-1912 *et seq.*, Neb. Const. art. I, §§ 3, 9, 11, and art. II, § 1, and the Fifth, Sixth, Eighth, and Fourteenth Amendments.

C.     The trial court committed plain error when it impaneled a jury that knew the co-defendant had previously been tried and convicted of the same murders in violation of Petitioner's rights under Neb. Const. art. I, § 11 and the Sixth and Fourteenth Amendments.

D.     The trial court erred in denying the Motion to prohibit jury dispersal and sequester the jury in violation of Petitioner's rights under Neb. Const. art. I, § 11 and the Sixth and Fourteenth Amendments.

E.     The trial court erred in denying the Motion to Continue when the State disclosed before opening statement that it "might" have an agreement with the co-defendant and when the trial court denied the Motion to Continue when the State called the co-defendant to testify in violation of Neb. Rev. Stat. § 29-1919(2), Petitioner's right to effective assistance of counsel during opening statement and at the trial under Neb. Const. art. I, §§ 3 and 11 and the Sixth and Fourteenth Amendments, and his right to a fair and impartial trial under Neb. Const. art. I, §§ 3 and 11 and the Fifth, Sixth, and Fourteenth Amendments.

F.     The trial court erred in overruling hearsay objections to testimony regarding Nissen's "prior consistent" statements in violation of Petitioner's right to a fair trial under Neb. Const. art. I, §§ 3 and 11 and the Fifth, Sixth, and Fourteenth Amendments.

G.     There was "plain error" in the trial of this case when inadmissible evidence under the Nebraska Rules of Evidence was presented to the jury

in violation of Petitioner's rights under <u>Neb. Const.</u> art. I, § 11 and the Fifth, Sixth, and Fourteenth Amendments.

H.     The trial court erred when it failed to properly instruct in violation of Petitioner's rights under <u>Neb. Const.</u> art. I, §§ 3 and 11 and the Fifth, Sixth, Eighth, and Fourteenth Amendments in one or more of the following respects:

   1.     Instruction No. 10 erroneously instructed the jury on aiding and abetting and failed to require that Petitioner have the same "intent" as the principal.

   2.     Instruction No. 8 erroneously interwove the elements of premeditated and felony murder in a single charge, incorrectly instructed that intent to commit the felony of tampering with a witness was an element of felony murder, failed to instruct on the necessary temporal and spatial relationship between the felony and the act of killing in felony murder, and gave a step "acquit first" instruction that violated the Eighth and Fourteenth Amendments and the decision in *Beck v. Alabama.*

   3.     The trial court failed to give a curative instruction on the use of Mr. Nissen's prior conviction.

I.     Court appointed counsel failed to object to certain inadmissible evidence, failed to make proper objections, and failed to preserve issues for appeal in violation of Petitioner's rights under <u>Neb. Const.</u> art. I, §§ 3, 11, and 12 and the Sixth, Eighth, and Fourteenth Amendments.

J.     The death sentences and sentences of imprisonment violated Petitioner's rights under <u>Neb. Rev. Stat.</u> § 29-2519 *et seq.*, <u>Neb. Const.</u> art. II, § 1, art. I, §§ 1, 3, 6, 9, 11, and 13, and the Fifth, Sixth, Eighth, and Fourteenth Amendments based on one or more of the following specifics:

   1.     The jury was not unanimous on the theory of guilt and did not find an "intent to kill" as required by the <u>Neb. Const.</u> art. I, §§ 1, 3, 6, 9, and 11 and the Fifth, Sixth, Eighth, and Fourteenth Amendments.

   2.     The agreement that the co-defendant would receive a life sentence for his testimony violated <u>Neb. Rev. Stat.</u> § 27- 605, <u>Neb. Rev. Stat.</u> § 29-2519 *et seq.*, separation of powers under <u>Neb. Const.</u> art. II, § 1, due process and equal protection of the law under <u>Neb.</u>

<u>Const.</u> art I, §§ 1, 3, 9, and 11, and the Fifth and Fourteenth Amendments, and the right to be free from arbitrary and capricious infliction of cruel and unusual punishment under <u>Neb. Const.</u> art. I, § 9 and the Eighth and Fourteenth Amendments.

3.    The Nebraska death penalty statutes, <u>Neb. Rev. Stat.</u> § 29-2519 *et seq.*, are unconstitutional based on one or more of the following specifics:

      a.    Death penalty statutes, <u>Neb. Rev. Stat.</u> § 29-2519 *et seq.*, are unconstitutionally vague and over broad in violation of due process and equal protection under <u>Neb. Const.</u> art. I, § 3 & 11 and the Fifth, Sixth, Eighth, and Fourteenth Amendments.

      b.    Death penalty statutes, <u>Neb. Rev. Stat.</u> § 29-2519 *et seq.*, inflict arbitrary, cruel, and unusual punishment in violation of <u>Neb. Const.</u> art. I, § 9 and the Eighth and Fourteenth Amendments.

      c.    <u>Neb. Rev. Stat.</u> § 29-2520 is standardless regarding how the sentencing panel is to perform the sentencing function in violation of <u>Neb. Const.</u> art. I, §§ 3, 6, 9, and 11 and the Fifth, Sixth, Eighth, and Fourteenth Amendments.

4.    The failure of the Nebraska district courts and the Nebraska Supreme Court to follow the express statutory requirements regarding procedures for conducting a comparative analysis violated Petitioner's rights in one or more of the following respects:

      a.    The Nebraska Supreme Court's limiting interpretation on comparative review required by <u>Neb. Rev. Stat.</u> §§ 29-2521.02 & 29-2521.03 violates separation of powers under <u>Neb. Const.</u> art. II, § 1 and the Eighth and Fourteenth Amendments.

      b.    The failure of Nebraska county attorneys and court personnel to follow the statutory mandate of <u>Neb. Rev. Stat.</u> §§ 292521.04 & 29-2524.04 violates <u>Neb. Const.</u> art. I, §§ 3 and 9 and the Fifth, Eighth, and Fourteenth Amendments.

      c.    The established Nebraska practice of allowing county attorneys to engage in unfettered bargaining on the sentence to be imposed in first degree murder convictions following either a plea or trial violates <u>Neb. Const.</u> art. II, § 1, <u>Neb.</u>

Const. art. I, §§ 3, 9, and 11, and the Fifth, Eighth, and Fourteenth Amendments.

5.      The death sentences imposed on Petitioner were illegal and unconstitutional in one or more of the following respects:

a.      The sentencing panel interpreted and applied Neb. Rev. Stat. §§ 29-2522 and 29-2521 regarding the burden of proof on aggravating factors and the risk of nonproduction and risk of nonpersuasion regarding mitigating circumstances and acted without standards with which to determine if a sentence of death was disproportionate considering the crime and the defendant in violation of Neb. Const. art. I, §§ 3 & 9 and the Fifth, Eighth, and Fourteenth Amendments.

b.      The finding of the second prong of aggravating circumstance (1)(b), "apparent effort to conceal crime/identity," was made pursuant to an unconstitutionally vague and imprecise standard under the Eighth and Fourteenth Amendments.

c.      The finding of the second prong of aggravating circumstance (1) (h), "disrupt or hinder the lawful exercise of enforcement of the laws," was made pursuant to an unconstitutionally vague and imprecise standard under the Eighth and Fourteenth Amendments.

d.      The sentencing panel failed to make findings regarding the existence of mitigating factor (2)(b), "unusual pressures or influences/domination of another person," pursuant to an incorrect interpretation and application of an unconstitutional standard in violation of the Eighth and Fourteenth Amendments.

e.      The sentencing panel failed to make findings regarding the existence of mitigating factor (2)(c), "extreme mental/ emotional disturbance," pursuant to an incorrect interpretation and application of an unconstitutional standard in violation of the Eighth and Fourteenth Amendments.

f.      The sentencing panel failed to make full and complete findings regarding the existence of mitigating factor (2)(g), "capacity to conform his conduct. . .was impaired. . ." pursuant

to an incorrect interpretation and application of an unconstitutional standard in violation of the Eighth and Fourteenth Amendments.

g.   The sentencing panel failed to find mitigating circumstance (2)(d), "age of defendant," pursuant to an inaccurate application and interpretation of Nebraska law and shifted the burden to Petitioner to prove why he should receive the benefit of this circumstance without prior notice to Petitioner of the standard that would be applied in violation of the Eighth and Fourteenth Amendments.

h.   The sentencing panel failed to correctly perform the comparative analysis required by the Nebraska death penalty statutes Neb. Rev. Stat. § 29-2519 *et seq.* in violation of the Eighth and Fourteenth Amendments.

6.   The trial court was without jurisdiction when it imposed the prison sentences on February 29, 1996, and the sentences imposed violated the Double Jeopardy Clause of Neb. Const. art. I, §§ 3 & 12 and the Fifth and Fourteenth Amendments.

7.   The Nebraska Supreme Court practice of interpreting death penalty statutes for the first time on appeal, making factual findings and engaging in "reweighing" denies meaningful appellate review, denies proper notice of the nature of the proceedings and standards that will be applied, denies an opportunity to be heard, and denies the right to effective representation of counsel in violation of Neb. Const. art. V, §§ 1 and 9, art. I, §§ 3, 9, and 23, and the Fifth, Sixth, Eighth, and Fourteenth Amendments.

8.   The sentences of death are excessive.

*The issues that Petitioner raised in his pro se brief with the Nebraska Supreme Court were as follows:*

1.   The trial court erred in denying Petitioner's motion to quash the amended information in violation of Neb. Const. art. I, § 10, and the Sixth and Fourteenth Amendments in one or more of the following respects:

a.   The amended information improperly joined premeditated murder and felony murder in a single count that did not require the

jury to unanimously agree on the facts supporting either premeditated murder or felony murder.

b.    The amended information charged Petitioner with three counts of the offense of felony murder under <u>Neb. Rev. Stat.</u> § 28-303(2) (Reissue 1995) and failed to allege an intent to kill.

2.    Petitioner was deprived of a fair trial due to prosecutorial improprieties during opening and closing arguments.

*After oral argument before the Nebraska Supreme Court, Petitioner filed a motion raising the issue:*

The amendments to <u>Neb. Rev. Stat.</u> § 29-2523, made by 1998 Neb. Laws, LB. 422, which took effect on July 15, 1998, mitigate Petitioner's punishment, and thus, Petitioner must be resentenced.

12.    <u>Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, motions, or other actions with respect to this judgment in any court, state or federal?</u>

Yes ( X )     No (  )

13.    <u>If your answer to 12 is YES, please give the following information</u>

(a)    (1)    <u>Name of court</u>:     Nebraska Supreme Court

(2)    <u>Nature of proceeding</u>:     Motion for rehearing

(3)    <u>Grounds raised</u>:

*The issues assigned as error in the brief in support of the motion for rehearing were as follows:*

A.    The Nebraska Supreme Court erred when it failed to address the merits of Petitioner's Eighth and Fourteenth Amendment due process rights to be tried and sentenced by an impartial judge. Evidence of bias and partiality by a trial and sentencing court in a capital case constitutes structural error that cannot be waived by defense counsel's failure to move for recusal, but must be knowingly, intelligently, and personally waived by the defendant.

B.    The Nebraska Supreme Court erred when it said that it would not consider whether the trial judge should have recused himself because Petitioner did not request the judge's recusal.  Neb. Rev. Stat. § 27-605 and *Cline v. Franklin Pork, Inc.*, 210 Neb. 238, 313 N.W.2d 667 (1981) and their progeny make recusal automatic, non-waivable by the parties, and do not require counsel to make a recusal request before the trial court.

C.    The Nebraska Supreme Court erred when it said that the State's knowing failure to correct false testimony was subject to the same standard of review as for the admitted *Brady v. Maryland* violation. Such prosecutorial misconduct is judged by the stricter standard of whether the false testimony could "in any reasonable likelihood have affected the judgment of the jury."

D.    The Nebraska Supreme Court erred when it said that the *ex parte* communications between the prosecution and the trial court was not a "critical stage" of the proceeding under the Sixth and Fourteenth Amendments to the United States Constitution.  Whether a particular proceeding is a "critical stage" under the Sixth and Fourteenth Amendments is not limited to situations where evidence is presented, but includes those situations where a fair and just hearing was thwarted by the absence of the defendant and his counsel.

E.    The Nebraska Supreme Court erred when it said that Neb. Rev. Stat. § 28-105.01 (Reissue 1995) limited application of mitigating circumstance (2)(d) to a person of "advanced years."

(4)    Did you receive an evidentiary hearing on your petition, application, motion, or other action? Yes ( ) NO ( X )

(5)    Result:

The original opinion on direct appeal was amended and modified at *State v. Lotter*, 255 Neb. 889, 587 N.W.2d 673 (1999).  However, the convictions, death sentences, and sentences for use of a weapon were still affirmed.

(6)    Date of result:    January 8, 1999

(7)    Did you appeal this ruling?    Yes

(8)   <u>If the answer to 7 is YES, to what court, and what was the result of the appeal?</u>

Petition for certiorari to the United States Supreme Court was denied.

(9)   <u>Date of result (and citation, if known):</u>   June 7, 1999.

(10)   <u>If the answer to 7 is NO, please state your reasons for not appealing:</u>   Not applicable.

(b)   <u>As to any second petition, application, motion, or other action, please give the same information:</u>

(1)   <u>Name of court:</u>      Richardson County District Court

(2)   <u>Nature of proceeding:</u>

Post-conviction motion, motion for new trial, petition for writ of error coram nobis filed with the Richardson County District Court. Motion to remand to district court and impose life as required by *Ring v. Arizona* filed with the Nebraska Supreme Court (June 27, 2002).

(3)   <u>Grounds raised:</u>

*Issues raised in petitioner's motion for post-conviction relief were as follows:*

Ground One - The trial judge engaged in an improper ex parte communication with the prosecution in violation of the code of judicial conduct, and the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution

Ground Two - The Nebraska Supreme Court's creation of a duty on the part of trial counsel to move for the trial judge's recusal for the first time while the case was on appeal, when then existing statutory and case law imposed no such duty on a litigant or his counsel, violated the defendant's right to due process of law and proper notice of the procedures under which the case would be tried in violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and <u>Neb. Const.</u> art. I, §§ 1, 3, 9, & 11.

Ground Three - Ineffective assistance of trial counsel for failure to move for recusal of Judge Finn in violation of the Sixth and Fourteenth Amendments to the United States Constitution and <u>Neb. Const.</u> art. I, § 11.

Ground Four - Ineffective assistance of trial counsel for failure to make objections to evidence at trial in violation of the Sixth and Fourteenth Amendments to the United States Constitution and <u>Neb. Const.</u> art. I, § 11.

Ground Five - Death by electrocution as authorized and practiced in the State of Nebraska violates the Eighth and Fourteenth Amendments to the United States Constitution.

Ground Six - Petitioner's convictions were obtained as the result of the false and perjured testimony of Marvin Thomas Nissen in violation of the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution.

Ground Seven - Petitioner's death sentences were obtained as the result of the false and perjured testimony of Marvin Thomas Nissen in violation of the Due Process Clauses of the Fifth and Fourteenth Amendments and the Eighth and Fourteenth Amendments to the United States Constitution.

*The issues raised in petitioner's motion for writ of error coram nobis and motion for new trial were as follows:*

The Defendant alleges that the State knew, or reasonably should have known, that the testimony of Nissen given at the time of trial was false. The State failed to require any polygraph test or other method to determine the truthfulness of Nissen's testimony. Nissen's false testimony was material and there is a reasonable likelihood that the false testimony could have affected the judgment and verdict of the jury. The State's knowing or reckless use of perjured testimony violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Pyle v. Kansas*, 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214 (1942); *Mooney v. Holohan*, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935).

The Defendant's convictions based on the false testimony of Nissen constitutes a manifest injustice that requires reversal of his convictions under Defendant's substantive due process rights under the Fifth and Fourteenth Amendments to the United States Constitution. If Petitioner were convicted of being an aider and abettor, then Nissen's statements to Haley establish that the Defendant acted without the intent to kill and the Defendant's death sentences violate the Eighth and Fourteenth Amendments to the United States Constitution and the decisions in *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368 (1982) and *Tison v. Arizona*, 481 U.S. 137, 107 S.Ct. 1676 (1987).

*The issues raised in petitioner's motion filed with the Nebraska Supreme Court to remand to the district court for re-sentencing following the decision in Ring v. Arizona, 536 U S. 584, 122 S. Ct. 2428 (2002), were as follows:*

In the first supplemental brief allowed by the Nebraska Supreme Court:

A.     There is plain error in the imposition of Petitioner's death sentences because the Nebraska death penalty procedures set forth in <u>Neb. Rev. Stat.</u> §§ 29-2520 through 2523 are unconstitutional under the Sixth Amendment and Fourteenth Amendments to the United States Constitution and the decision in *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428 (2002).

B.     There is plain error in the imposition of Petitioner's death sentences because there were no jury findings of the aggravating circumstances as required by the Sixth Amendment and Fourteenth Amendments to the United States Constitution and the decision in *Ring v. Arizona,* 536 U.S.584, 122 S.Ct. 2428 (2002).

C.     There is plain error in the imposition of Petitioner's death sentences because the three judge sentencing panel was without jurisdiction to make the factual findings regarding aggravating circumstances under the Sixth Amendment and Fourteenth Amendments to the United States Constitution and the decision in *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428 (2002).

D.     There is plain error in the imposition of Petitioner's death sentences because the three judge panel was without jurisdiction to make the factual findings that Petitioner killed the three victims when the jury was instructed on an "aid and abet" theory to a charge of felony murder in violation of the Sixth Amendment and Fourteenth Amendments to the United States Constitution and the decision in *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428 (2002).

E.     There is plain error in the imposition of Petitioner's death sentences because the Information upon which he was convicted did not allege any of the necessary aggravating circumstances so as to increase the potential penalty from life to death as required by the Sixth Amendment and Fourteenth Amendment to the United States Constitution and the decision in *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428 (2002).

*The issues in the second supplemental brief allowed by the Nebraska Supreme Court were as follows:*

A.     The death sentences must be vacated and the case remanded to the district court for resentencing because LB 1 is applicable and Petitioner was not charged with aggravated capital murder, nor did a jury make findings necessary for death to be imposed.

B.     When LB 1 removes death as a potential punishment for the offense as alleged in the Information and verdict found by the jury, the sentence must be reduced to life under principles contained in *Davis v. United States*, 417 U.S. 333, 94 S.Ct. 2298 (1974) and its progeny.

(4)     <u>Did you receive an evidentiary hearing on your petition, application, motion, or other action?</u>  Yes (X) No ( )

The district court granted an evidentiary hearing only as to the issues relating to ineffective assistance of counsel and the newly discovered evidence that Nissen confessed to his cell mate that he did the killings.

(5)     <u>Result:</u>     All of the motions before the Richardson County District Court were denied.

(6)     <u>Date of result:</u>     December 19, 2000

(7)     <u>Did you appeal this ruling?</u>     Yes

(8)     <u>If the answer to 7 is YES, to what court, and what was the result of the appeal?</u>

The Nebraska Supreme Court affirmed the denial of post conviction relief, denial of the motion for new trial, and denial of the petition for writ of error coram nobis.

(9)     <u>Date of result (and citation, if known):</u>

July 11, 2003 - The Nebraska Supreme Court denied the appeal which is reported at *State v. Lotter*, 266 Neb. 245, 664 N.W.2d 894 (2003).

September 17, 2003 - The Nebraska Supreme Court denied Petitioner's motion for rehearing.

October 30, 2003 - Petition for certiorari filed with the United States Supreme Court on the following issues:

1.     Whether *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428 (2002) involved a new substantive, rather than procedural, rule and is therefore exempt from the retroactivity analysis of *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060 (1989).

2.     Whether electrocution as the sole method of conducting a judicial execution violates the prohibition against cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

June 28, 2004 - United States Supreme Court denies certiorari.

(10)   If the answer to 7 is No, please state your reasons for not appealing.

    Not applicable.

(c)   As to any third petition, application, motion, or other action, please give the same information:

   (1)   Name of court:     Richardson County District Court

   (2)   Nature of proceeding:

Motion to allow DNA Testing of certain items of evidence under the Nebraska DNA Testing Act, Neb. Rev. Stat. § 29-4116 *et seq.* (Cum. Supp. 2001)

   (3)   Grounds raised

A.     Whether Petitioner should be allowed to conduct DNA testing of items of evidence in the possession of the State as required by Neb. Rev. Stat. § 29.4116 *et seq.* (Cum. Supp. 2001).

B.     Whether Petitioner should be allowed to attend the hearing on the DNA testing motion under the due process clause of the Fourteenth Amendment to the United States Constitution.

   (4)   Did you receive an evidentiary hearing on your petition, application, motion, or other action?     No.

(5)   <u>Result</u>     The district court refused to allow Petitioner to object the items of evidence to DNA Testing.

(6)   <u>Date of result</u>    September 12, 2002

(7)   <u>Did you appeal this ruling?</u>   Yes.

(8)   <u>If the answer to 7 is YES, to what court, and what was the result of the appeal?</u>

The Nebraska Supreme Court affirmed the decision of the district court.

(9)   <u>Date of result (and citation, if known):</u>

September 28, 2003 - *State v. Lotter*, 266 Neb. 758, 669 N.W.2d 438 (2003).

(10)  <u>If the answer to 7 is No, please state your reasons for not appealing.</u>  Not applicable.

(d)   <u>As to any fourth petition, application, motion, or other action, please give the same information:</u>

(1)   <u>Name of court:</u>   Richardson County District Court

(2)   <u>Nature of proceeding:</u>

Motion for post-conviction relief under <u>Neb. Rev. Stat.</u> §§ 29-3001 - 29-3004.

(3)   <u>Grounds raised</u>

Petitioner was denied due process, equal protection of the law, a fair direct appeal and post-conviction appeal, and effective assistance of counsel by Jerry Soucie ("Soucie"), who represented the defendant on direct appeal and post conviction proceedings, in that:

A.   Soucie failed to present to the court documents received through discovery during the post-conviction proceedings demonstrating Nissen's tendency to make things up, of him being a con-artist, of his threatening other people including his step-mother and Clyde Burns, and of threatening

to go on a killing spree if he were ever to get out of the Nebraska Correctional Department's Diagnostic and Evaluation Center.

B.      Soucie failed to demonstrate that the prosecutor committed misconduct by failing to turn over (a) police reports of co-defendant Nissen's statements that "he wanted to get rid of Clyde Burns," and (b) statements from Nissen's stepmother that "Nissen makes up stories" and "will do anything to get off," is manipulative, and had received mental health treatment because of actions against himself and others.

C.      Soucie failed to arrange for the appearance of Nissen's stepmother at the post-conviction hearing or to depose her concerning Nissen's tendency to make things up and to blame others for his own actions.

D.      Soucie failed to call, as a post-conviction witness, the Falls City Police department official who (a) took Nissen's statements regarding "getting rid of Clyde Burns" and (b) witnessed Nissen's changing stories from one police report to another.

E.      Soucie failed to raise *Ring v. Arizona*, 122 S.Ct. 2428, in any of petitioner's filings with the Nebraska Courts, and what effect that case might have on the overall sentencing aspect of petitioner's case.

F.      Soucie failed to bring up and argue a claim of actual innocence.

(4)     <u>Did you receive an evidentiary hearing on your petition, application, motion, or other action?</u>        No

(5)     <u>Result</u>        Denied.

(6)     <u>Date of result</u>        October 22, 2003

(7)     <u>Did you appeal this ruling?</u>  Yes

(8)     <u>If the answer to 7 is YES, to what court, and what was the result of the appeal?</u>

The Nebraska Supreme Court summarily affirmed the decision of the district court.

(9)     <u>Date of result (and citation, if known):</u>        April 21, 2004

(10)   <u>If the answer to 7 is No, please state your reasons for not appealing.</u>  Not applicable.

(e)   As to any fifth petition, application, motion, or other action, please give the same information:

(1)   <u>Name of court:</u>   Richardson County District Court

(2)   <u>Nature of proceeding:</u>

Motion to Preclude Imposition of Sentence of Death

(3)   <u>Grounds raised:</u>

Petitioner is a person with mental retardation and therefore, under <u>Neb. Rev. Stat.</u> § 28-105. 1(2) and the Eighth and Fourteenth Amendments to the Constitution, imposition of Petitioner's sentence of death is precluded as a matter of law.

(4)   <u>Did you receive an evidentiary hearing on your petition, application, motion, or other action?</u>  Not yet.

(5)   <u>Result:</u>   The motion is still pending in the District Court of Richardson County.

(6)   <u>Date of result:</u>   Not applicable.

(7)   <u>Did you appeal this ruling?</u>   Not applicable.

(8)   <u>If the answer to 7 is YES, to what court, and what was the result of the appeal?</u>   Not applicable.

(9)   <u>Date of result (and citation, if known):</u>   Not applicable.

(10)   <u>If the answer to 7 is No, please state your reasons for not appealing.</u>  Not applicable.

13.   <u>State concisely every ground on which you claim you are being held unlawfully. Summarize briefly the facts supporting each ground. If necessary, you may attach additional pages stating additional grounds and the facts supporting the same.</u>

See below.

## GROUNDS FOR RELIEF

A.   *Ground One:   An ex parte communication between the trial judge, the prosecutor, and Petitioner's co-defendant, Marvin Thomas Nissen, violated Petitioner's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution.*

On the morning of December 31, 1993, three bodies were discovered at a farmhouse near Humboldt, Nebraska. The three individuals whose bodies were found were Lisa Lambert ("Lambert"), Teena Brandon ("Brandon"), and Philip DeVine ("DeVine").   All three had been shot and killed. The State charged Petitioner and his co-defendant, Marvin Thomas Nissen ("Nissen"), with murdering these individuals in an effort to thwart the Falls City Police Department's investigation into allegations that Petitioner and Nissen had sexually assaulted Brandon.

Just prior to the start of Petitioner's trial, the State's only admissible evidence against Petitioner was circumstantial.  The State had recovered a knife and a .380 caliber handgun several miles from the farmhouse where the alleged murders took place. There was evidence linking blood on the knife to Brandon, and evidence that all three alleged victims had been shot with the discarded handgun. There was also evidence that the name of Petitioner's father was handwritten on the sheath of the knife, that the handgun belonged to Petitioner's friend, Eddie Bennett ("Bennett"), and that Petitioner had visited Bennett on the night the alleged murders took place. However, there was *no* evidence that Petitioner was present at the time and place of the alleged murders, and *no* evidence as to the degree of Petitioner's alleged participation in the offenses.

In order to bolster its faltering case against Petitioner, the State sought testimony from Nissen. Nissen had already been convicted of one count of first-degree murder and two counts of second-degree murder in connection with the deaths, but he had not yet been sentenced for those crimes. Under Nebraska law, the maximum penalty Nissen faced under was death by electrocution. The State subpoenaed Nissen to testify at Petitioner's trial, but Nissen's attorney filed a motion to quash the subpoena and let it be known that Nissen would exercise his Fifth Amendment privilege against self-incrimination if called to testify.

Faced with the absence of Nissen's testimony and the State's likely inability to secure a conviction of Petitioner, James Elworth ("Elworth"), the Assistant Attorney General specially assigned to prosecute Petitioner, sought an agreement with Nissen. Pursuant the proposed agreement, Nissen would testify against Petitioner, and in exchange Nissen would not receive the death penalty for his own crimes.   There was one problem with the proposed agreement:   because

sentencing is a judicial function under Nebraska law, Elworth could not guarantee that Nissen would not be sentenced to death.

In order to solve this problem, Elworth, Nissen, and Nissen's attorney-of-record, Peter Blakeslee ("Blakeslee"), met with the trial judge, the Honorable Robert T. Finn. Their meeting took place either in the late hours of May 14, 2001 or the early morning hours of May 15, 2001, the date Petitioner's trial was scheduled to begin. Neither Petitioner nor Petitioner's counsel were present at this meeting. At this critical stage of the proceedings, Judge Finn assured Nissen and Blakeslee that if Nissen agreed to testify on behalf of the State at Petitioner's trial, he would not be sentenced to death. Judge Finn's participation in these negotiations at least arguably violated Nebraska law.

On the first morning of the trial, Judge Finn disclosed that he had engaged in a "conversation" with Nissen, Blakeslee, and Elworth:

> THE COURT:  With regard to [Nissen's] Motion to Quash, I had a conversation last night with [Nissen's counsel] and defense counsel . . . Or the prosecution, yes. Excuse me. Now I'm gonna let them explain to you what's goin' - what the nature of that was, because I think you're entitled to know, in view of your Motion [in Limine]. Okay.
>
> MR. ELWORTH:  Uh - we're negotiating an agreement that would have him testify in this matter; it's not yet been finalized.
>
> THE COURT:  It has not yet been finalized?
>
> MR. ELWORTH:  No. Oh, yeah, that's right. The - and [Nissen's counsel], I think, agreed to continue his Motion to Quash until such time as Nissen would be called, I think that's the extent of it.

Although Judge Finn questioned whether the agreement had been finalized, he did not challenge Elworth's statement that it had not been finalized, nor did Judge Finn disclose his own role in the negotiation of the agreement with Nissen. By failing to disclose the contents of the ex parte communication and his own participation in the prosecutor's negotiations with Nissen, Judge Finn deprived Petitioner of factual grounds on which he could have sought Judge Finn's recusal, a continuance, or a mistrial.

Having been assured that he could avoid the death penalty, Nissen testified against Petitioner at Petitioner's trial. Nissen testified that Petitioner conceived the idea of committing the murders in order to avoid prosecution on a charge of

sexual assault, and that it was Petitioner who shot all three of the alleged victims and disposed of the handgun and knife. When asked on cross-examination about his agreement with the State, Nissen testified the agreement was that he would not be sentenced to death if he testified against Petitioner.

It is clear that Nissen would *not* have testified against Petitioner had Judge Finn not assured Elworth, Nissen, and Blakeslee that Nissen would not receive a death sentence if he testified. It is also clear this assurance was given during an ex parte communication outside the presence of Petitioner's lawyer. Finally, it is clear this ex parte communication changed the entire outcome of the trial, by enabling the State to provide alleged eyewitness testimony that Petitioner had planned and personally committed the alleged murders, as opposed to the shaky circumstantial evidence it otherwise would have had to rely upon. Under these circumstances, the trial court's ex parte communication deprived Petitioner of his rights to due process, effective assistance of counsel, and a fair trial.

B.      Ground Two: The trial court's denial of Petitioner's motion to continue violated Petitioner's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution.

Petitioner first learned of a proposed agreement between the State and Nissen at about 10:00 a.m. on the first day of Petitioner's trial, approximately fifteen minutes before opening statements. At that time, Elworth lied to Petitioner and Judge Finn by stating that the agreement was still under consideration and not yet final. Nonetheless, Petitioner's counsel, Emil Michael Fabian ("Fabian"), immediately sought a continuance.

In seeking a continuance, Fabian pointed out the difference it would make if the case were tried on direct as opposed to circumstantial evidence. Because Judge Finn did not disclose the extent to which he had participated in negotiations with the prosecutor and Nissen, Fabian was unable to use the ex parte communication to seek a mistrial or to support his request for a continuance. Judge Finn, who had expressed concerns about the high cost of the trial at several proceedings leading up to the trial, denied the motion for continuance. His only stated rationale for doing so was that the jurors were waiting.

Fabian had prepared an opening statement emphasizing the State's lack of direct evidence. Not knowing whether or not Nissen would testify, Fabian gave that opening statement. He told the jury that the State's circumstantial evidence was "only as strong as its weakest link" and asked the jury to hold the State to its promise of proving that Petitioner stole the alleged murder weapon and shot the victims with it.

Forcing Petitioner to go forward without an opportunity to adjust to the possibility that Nissen would testify was predictably and unfairly devastating to his defense. Nissen did testify, providing a detailed, albeit untruthful, account of how Petitioner planned the alleged murders and carried them out by shooting the victims himself. Nissen minimized his own role in the alleged offenses by stating that he had only stabbed one of the victims, Brandon, after she had already been shot, and that he had done so with a knife provided to him by Petitioner. The jury found Petitioner guilty of three counts of first-degree murder, one count of burglary, and three counts of the use of a weapon to commit a felony.

The failure to grant Petitioner a continuance also deprived him of valuable impeachment evidence. More than a year before trial, Petitioner filed a discovery motion, and the trial court granted that motion, ordering the State to provide material exculpatory evidence. Notwithstanding this agreement, Elworth repeatedly denied that he had any obligation to turn over evidence that might be used to impeach the State's witnesses. Elworth's refusal to produce such evidence, which clearly violated *Brady v. Maryland*, 373 U.S. 83 (1963), *United States v. Agurs*, 427 U.S. 97 (1976), and *United States v. Bagley*, 473 U.S. 667 (1985), relates particularly to Petitioner's motion for a continuance.

Among the evidence Elworth withheld from Petitioner was crucial evidence regarding Nissen's credibility. Early on in the State's investigation of the presumed murders, Nissen's stepmother, Pam Nissen, had contacted the police in Falls City, Nebraska, and told them that Nissen was a liar - the best con-artist she had ever seen - who in the past had lied to escape blame and place it on others. The prosecution had a similar statement from a friend of Mrs. Nissen. The prosecution also had evidence that Nissen had lied to the Falls City Police about being attacked by another person in order to implicate that person, that Nissen had only told the truth – that he had not been attacked – after he failed a polygraph detector test, and that Nissen refused to take a polygraph test as part of his agreement to testify in Petitioner's case. This exculpatory evidence, which the prosecution failed to disclose, is discussed in more detail below.

In the end, the trial court's denial of the motion for continuance deprived Petitioner of two critical aspects of a fair trial. First, the failure to grant a continuance forced Petitioner to make an opening statement without knowing whether Nissen would be available to testify, and forced him to change his theory of the case in the middle of trial. Second, the failure to grant a continuance allowed the State to present damaging testimony from Nissen without giving Petitioner an opportunity to obtain crucial exculpatory evidence that Petitioner could have used to impeach Nissen. These deprivations violated Petitioner's right to a fair trial under the Fifth, Sixth, Eighth, and Fourteenth Amendments.

C.   *Ground Three: The prosecutor's misconduct in failing to disclose the existence of an agreement between the State and Nissen until the end of the second day of Petitioner's trial violated Petitioner's rights under Fifth, Sixth, Eight, and Fourteenth Amendments to the Constitution.*

In informing Fabian that he was negotiating an agreement with Nissen, Elworth made one crucial misstatement of fact and failed to disclose one highly material piece of information. First, Elworth's statement that he was still negotiating an agreement with Nissen was false; in fact, Nissen had already agreed to testify in exchange for leniency at sentencing and Judge Finn had already indicated to Nissen and Blakeslee that he would not interfere with that agreement. Second, Elworth omitted to state that the terms of the agreement included a promise that Nissen would not be subject to the death penalty.

Elworth's false statement and omission of fact constituted prosecutorial misconduct and deprived Petitioner of his constitutional rights to effective assistance of counsel and a fair trial. Having been told that Nissen had not yet agreed to testify, Fabian went forward with his opening statement as originally planned, which focused on the State's lack of direct evidence, and did not mention the possibility of testimony from Nissen or any reasons why the jury might disbelieve such testimony. Not having been provided all the details of Nissen's agreement with the Elworth, Fabian was prevented from alerting the jury to a key reason why it should not believe Nissen's testimony – that the judge and prosecutor had agreed to spare Nissen from a sentence of death by electrocution – and from seeking Judge Finn's recusal or a continuance based upon Judge Finn's participation in the agreement. By preventing Fabian from addressing these aspects of the case, Elworth's prosecutorial misconduct deprived Petitioner of his rights under the Sixth, Eighth, and Fourteenth Amendments.

D.   *Ground Four: The prosecutor's misconduct in failing to produce the actual agreement with Nissen until after Nissen had testified violated Petitioner's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution.*

Elworth refused to provide a copy of Nissen's agreement with the State until after Nissen had testified. The written agreement contained one provision about which Nissen did not testify under cross examination – that felony charges filed against Nissen would be dismissed in exchange for his testimony. This aspect of the agreement was subject to disclosure under *Brady v. Maryland*, 373 U.S. 83 (1963), *United States v. Agurs*, 427 U.S. 97 (1976), and *United States v. Bagley*, 473 U.S. 667 (1985). Elworth's failure timely to provide a copy of the agreement violated Petitioner's rights to due process and a fair trial as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution.

E.     *Ground Five: The prosecutor's misconduct in knowingly using Nissen's perjured testimony to obtain Petitioner's conviction violated Petitioner's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution.*

Nissen provided false testimony against Petitioner at Petitioner's trial. When initially questioned by law enforcement, Nissen denied any role in the alleged murders.  While being held in the Richardson County Jail, however, Nissen admitted to two fellow prisoners that he had stabbed Brandon. Later, while being held at the Lincoln Correctional Center, Nissen told a fellow inmate, Larry Dean Schott, that he, and not Petitioner, had shot Philip DeVine, commenting that DeVine was "just a nigger."  As Elworth and Richardson County Attorney, Doug Merz ("Merz") later admitted, Nissen also lied under oath at a hearing on his motion to suppress.

The State had evidence that in the past Nissen had falsely accused at least one person of assault.  On December 1, 1989, Nissen provided a five-page written statement to the Falls City Police Department, describing in great detail how a man named Clyde Burns ("Burns") and two others had cut Nissen in an alley, allegedly because Nissen had kissed and hugged Burns's ex-girlfriend.  The State of Nebraska performed a polygraph examination on Nissen.  After Nissen failed that polygraph examination, he admitted in a written statement that he had cut himself with a razor blade so he could "get rid of Clyde Burns."  Documents containing this evidence, which were in the possession of the County Attorney, were not turned over to Petitioner until more than four years after his trial was over, when Petitioner obtained a court order to look through the prosecutor's files.

Prior to Petitioner's trial, Merz also received information from Nissen's stepmother, Pam Nissen, indicating that Nissen had a proclivity to make things up.  A document in the County Attorney's file records a telephone conversation on January 12, 1994, during which Mrs. Nissen called and said that her stepson was a "thief, liar, and con artist," gave examples of violent acts he had committed, and provided names, addresses, and telephone numbers of individuals who were familiar with him.  Documents recording this conversation, and an earlier, similar conversation between a friend of Mrs. Nissen and an employee of the Falls City Journal, were not turned over to Petitioner until after his trial was over.

There was one additional, significant piece of information which the prosecution failed to disclose.  During the negotiation of Nissen's agreement to testify, Nissen resisted the State's proposal that he take a polygraph test, and the prosecution failed to turn over a letter reflecting this refusal.  While the results of a polygraph test may not have been admissible at trial to show that Nissen was lying, his refusal to take such a test would have been admissible to show that he did not believe he was telling the truth.

In light of the evidence described above, the prosecutors either knew or should have known that the testimony Nissen gave at the trial was perjured. Their use of Nissen's testimony notwithstanding this fact violated Petitioner's rights to due process and a fair trial under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution.

F.     *Ground Six: The prosecutor's misconduct in failing to disclose exculpatory evidence that could have been used to impeach Nissen violated Petitioner's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments.*

As noted above, Elworth failed to disclose to Petitioner evidence that Petitioner could have used to impeach Nissen's testimony. This evidence was exculpatory and thus subject to disclosure under *Brady v. Maryland*, 373 U.S. 83 (1963), *United States v. Agurs*, 427 U.S. 97 (1976), and *United States v. Bagley*, 473 U.S. 667 (1985). Elworth's calculated refusal to disclose this evidence prevented Petitioner's attorney from effectively cross-examining Nissen and deprived Petitioner of a fair trial. This prosecutorial misconduct violated Petitioner's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments.

G.     *Ground Seven: The prosecutor's misconduct during his closing argument violated Petitioner's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution.*

During his closing argument to the jury, Elworth said, "John Lotter can only be described in one word. And that word is evil. . . . That's what we're dealing with here. You bet we're dealing with evil. But the evil's on trial. . . . This is evil and he's guilty of seven charges." Elworth also invoked the O.J. Simpson trial, asking the jurors to compare the police work done in Petitioner's case to the police work done in the Simpson case, even though no evidence had been presented concerning the police work in the Simpson case. These arguments appealed to the jury's passion and impermissibly incited the jury to deliver a verdict based on passion, as opposed to reason, in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution.

H.     *Ground Eight:  The cumulative effect of the prosecutor's misconduct, as outlined in Grounds One through Seven, above, violated Petitioner's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments.*

The cumulative effect of Elworth's misconduct in engaging in an ex parte communication with Judge Finn that involved Judge Finn in the negotiation of the State's agreement with Nissen, in failing timely to disclose the existence and terms of that agreement, in failing to disclose exculpatory evidence, in offering perjured testimony, and in making inflammatory statements to the jury during closing

arguments, as described in more detail above, deprived Petitioner of his rights to due process, the effective assistance of counsel, and a fair trial, as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution.

I.     *Ground Nine: As demonstrated by the exculpatory evidence which the prosecution failed to produce before the end of Petitioner's trial, other exculpatory evidence that was not in the prosecution's possession at the time of Petitioner's trial, the fact that Nissen has now recanted his trial testimony, and DNA evidence that may corroborate Nissen's recantation, Petitioner is actually innocent of the charges against him and the sentence of death that has been imposed, and Petitioner's conviction and sentence violate the Sixth, Eighth, and Fourteenth Amendments to the Constitution.*

As noted above, Nissen testified at Petitioner's trial that Petitioner conceived the plan to kill Brandon and any witnesses and that Petitioner shot all three of the victims himself. The three-judge sentencing panel itself recognized "that without Marvin Nissen's testimony the case against [Petitioner] was largely circumstantial and that there were some significant weaknesses in the evidence against [Petitioner]."

In addition to the exculpatory evidence discussed above, additional evidence discrediting Nissen's testimony has come to light since Petitioner's trial. Before his own trial, Nissen told a fellow inmate, Michael Hall, that he stabbed and shot Brandon. (4193:22 – 4197:7; 4198:14-15.) After the conclusion of his trial, Nissen described to another inmate, Jeff Haley, how he shot Brandon three times in the head and stabbed her in the side (Ex. 202 at 14-19), how he shot Lambert as she begged for her life (id. at 19-24), and how he shot DeVine because DeVine was a witness and because Nissen "just didn't like niggers" (id. at 24-25.) Nissen also described disposing of the murder weapons himself. (Id. at 27-28.) Nissen told Haley that, while he was murdering Brandon, Lambert, and DeVine, Petitioner was just running around, looking out the windows of the house, and yelling "what are you doing?" (Id. at 26-27.)

When questioned at a post-trial deposition, Nissen refused to answer any questions about the deaths of Brandon, Lambert, and DeVine, asserting his Fifth Amendment privilege against self-incrimination. The privilege against self-incrimination does not apply in these circumstances, and Nissen's assertion of the privilege creates an adverse inference that he lied under oath at Petitioner's trial and was therefore concerned about a possible conviction for perjury.

Viewed in light of the exculpatory information which the prosecution failed to disclose, Nissen's statements to Hall and Haley demonstrate that Petitioner was not guilty of the crimes charged and not eligible for the death penalty under Nebraska law or the United States Constitution. DNA evidence can potentially corroborate Nissen's out-of-court statements to Hall and Haley. Accordingly, Petitioner's conviction and sentence violate the guarantees of due process and a fair trial contained in the Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution.

J.    *Ground Ten:  The trial court's instructions on the charges of first-degree murder, which did not require the jury to reach a unanimous agreement as to whether Petitioner committed premeditated murder or felony murder, violated Petitioner's rights under the Sixth, Eighth, and Fourteenth Amendments to the Constitution.*

The trial court gave the jury the following erroneous instructions on the elements of first-degree murder:

The material elements of . . . Murder in the First Degree . . . are:

1.    That the Defendant, John L. Lotter, killed [Teena Ray Brandon, Lisa Lambert, and Phillip DeVine.]

2.    That the Defendant, John L. Lotter, did so purposely and with deliberate and premeditated malice; or that the Defendant, John L. Lotter, did so while in the perpetration of a Burglary.

3.    The Defendant did so on or about December 31, 1993.

4.    The Defendant did so in Richardson County, Nebraska.[1]

(T. 414-425.) These instructions, which impermissibly conflated the elements of premeditated murder and felony murder and did not require the jury to reach a unanimous verdict on these elements, violated Petitioner's rights under the Sixth, Eighth, and Fourteenth Amendments to the Constitution.

---

[1] For the sake of brevity, the instructions the trial court gave on three separate charges of first-degree murder are consolidated here.

K.    *Ground Eleven:  Jury instructions advising the jurors that they needed to acquit Petitioner of first-degree murder before they could consider whether Petitioner was guilty of a lesser-included offense violated Petitioner's rights under the Sixth, Eighth, and Fourteenth Amendments to the Constitution.*

After incorrectly instructing the jury on the substantive elements of first-degree murder and the elements of burglary and tampering with a witness, the trial court gave the jury the following erroneous and unconstitutional instructions:

> If you find from the evidence beyond a reasonable doubt that each and every one of the foregoing elements . . . is true, then it is your duty to find the Defendant guilty of Murder in the First Degree. . . . On the other hand, if you find the State has failed to prove beyond a reasonable doubt any one or more of such foregoing material elements, it is your duty to find the Defendant not guilty. . . . You shall then proceed to consider the lesser included offense of murder in the second degree.[2]

(T. 415 - 421.) These instructions violated the Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution under the principles set forth in *Beck v. Alabama*, 447 U.S. 625 (1980).

L.    *Ground Twelve: Death by electrocution, as practiced in the State of Nebraska, constitutes cruel and unusual punishment, and thus Petitioner's sentence of death by electrocution violates the Eighth and Fourteenth Amendments to the Constitution.*

Neb. Rev. Stat. § 29-2532 in effect at the time of the alleged murders requires that electrocution be used as the method of execution.  The statute does not authorize any other means of execution.

When Nebraska was admitted to the union in 1867, executions were conducted in the county of conviction by hanging.  In 1903, all executions were performed the State Penitentiary in Lincoln, still by hanging.  Beginning in 1920 electrocution was adopted as the sole method of execution in Nebraska and has continued as the sole method of execution until the present day.

Nebraska electrocutions have demonstrated cases of the wanton and unnecessary infliction of pain, suffering, and the needless mutilation of the condemned prisoner.  The present Nebraska electrocution procedure calls for

---

[2]See note 1, supra.

application of 2450 volts of electricity for eight seconds, followed by application of 480 volts for twenty-two seconds, followed by a twenty-second pause, followed by a second application of 2450 volts for eight seconds and 480 volts for twenty-two seconds. There is not any scientific or medical reason for this procedure and the purposeful twenty-second delay between applications of the current potentially allows the inmate to regain consciousness. The three most recent Nebraska executions, Harold "Willie" Otey ("Otey"), John Joubert ("Joubert"), and Robert Williams ("Williams"), used this procedure.

When a person is electrocuted in the electric chair, there is no way to know how much voltage is being delivered, unless a voltage meter is attached to the person. The amount of current being delivered depends on the resistivity of human tissue; each type of tissue conducts electricity differently. The skull shields the brain from electricity; certain evidence indicates that less than one-tenth of the current used in an electrocution goes to the brain. Merely because an inmate's heart stops beating does not mean he or she has lost consciousness. The pause in application of the current is likely more painful than a continuous jolt would be.

The electrodes of the electric chair cause "charring" burns so severe they are categorized as fourth-degree burns. As saline solution drips from the spots where the electrodes are attached, electricity can arc and cause burns to other parts of the condemned prisoner's body. None of these burns are necessary to cause death.

The executions of Otey, Joubert, and Williams demonstrate the cruel and unnecessary suffering inflicted by use of the electric chair. Otey was still breathing after the first and second applications of electricity. When Williams was electrocuted, smoke emanated from his knee and head; a post-mortem examination revealed a "bubble blister" the size of a baseball on Williams's left calf and pronounced "charring" on both sides of the knee and on the top of the head. Joubert suffered a four-inch blistering burn on the top of his head and blistering on both sides of his head above his ears.

Electrocutions performed in other States using procedures similar to those currently used in Nebraska have resulted in documented and repeated malfunctioning resulting in ghastly spectacles of violent disfigurement so as to constitute wanton physical, psychological, and moral cruelty. Some examples of botched executions using electrocution include the following:

1.  <u>John Evans, Alabama, Executed April 22, 1983.</u>  After the first jolt of electricity, sparks and flames erupted from the electrode attached to his leg. The electrode then burst from the strap holding it in place and caught on fire.  Smoke and sparks came out from under the hood.  Two physicians entered the chamber and found a heartbeat. The electrode was reattached to his leg.  More smoke and burning flesh.  Again doctors found a heartbeat. Ignoring the pleas of Evan's lawyer, a third jolt was applied.  The execution took 14 minutes and left Evan's body charred and smoldering.

2.  <u>Alpha Otis Stephens, Georgia, Executed December 12, 1984.</u> After the first jolt of electricity failed to kill him, Stephens struggled for eight minutes before a second charge finished the job.  The first jolt took two minutes, and there was a six minute pause so his body could cool before physicians could examine him and declare that another jolt was needed.   During that six-minute interval, Stephens took 23 breaths.

3.  <u>William E. Vandiver, Indiana, October 16, 1985.</u>  Vandiver was still breathing after the first administration of 2,300 volts, and the current had to be applied three more times before he died.  Vandiver's attorney, Herbert Shaps, witnessed the killing and said it was outrageous.  The Department of Corrections admitted the execution "did not go according to plan."  The physician who pronounced death said, "This is very rare."

4.  <u>Horace F. Dunkins, Alabama, July 14, 1989.</u>  It took two jolts (nine minutes apart) to kill Dunkins.  The foul-up was caused by "human error": faulty cable hookups.  As a result, there was not enough current to cause death. Death was pronounced 19 minutes after the first jolt.

5.  <u>Jesse Joseph Tafero, Florida, May 4, 1990.</u>  When the state replaced a "natural" sponge with a synthetic sponge in the headpiece of the execution apparatus, six-inch flames erupted, and three jolts of power were required to stop Tafero's breathing.  Support for the state's faulty sponge theory was generated by sticking a part of it into a "common household toaster" and noting that it smoldered and caught fire.  Extensive investigation by the office of the Capital Collateral Investigator in Tallahassee questioned this theory as other states have used synthetic sponges with no problems.

6.  <u>Wilbert Lee Evens, Virginia, October 17, 1990.</u>   During Evens's electrocution, blood spewed from the right side of the mask on Evens's face, drenching his shirt.   Evens continued to moan after the first jolt of electricity was applied.  The autopsy concluded that the bleeding resulted from high blood pressure brought on by the electrocution.

7.   <u>Derick Lynn Peterson, Virginia, August 22, 1991.</u> After a physician determined that the first cycle of electricity had failed to kill Peterson, a second cycle was required. It was the second time this electrical equipment had been used since Virginia's electric chair had been moved to Greenville from the state's old death house in Richmond. In the aftermath of the execution, prison officials announced that in the future they would routinely administer two cycles before checking for a heart beat.

8.   <u>Pedro Medina, Florida, March 25, 1997.</u> With the first jolt of electricity, blue and orange flames sparked from the mask covering Medina's face. Flames up to a foot long shot out from the right side of Medina's head for 6 - 10 seconds. The execution chamber clouded with smoke, and the smell of burnt flesh filled the witness room.

9.   <u>Allen Lee Davis, Florida, Executed July 8, 1999.</u> Davis was the first inmate to be executed in Florida's new electric chair. When hit with the 2,300 volts, blood poured from Davis's mouth. The blood poured onto the collar of his white shirt, and oozed onto his chest. By the time he was pronounced dead, the stain on Davis's chest had grown to the size of a dinner plate, and seeped through buckle holes on the leather chest strap holding him to the chair.

Evolving standards of decency throughout the United States has resulted in the elimination of electrocution as the method of imposing death. Since 1974, the use of electrocution has been gradually and consistently eliminated as the sole method for imposing death. In 1974, electrocution was the method of execution authorized in approximately nineteen states. Since that time, the states have consistently eliminated electrocution as the method of execution:

1.   1974 - Electrocution was the sole method of execution in Alabama, Arkansas, Connecticut, Florida, Georgia, Illinois, Indiana, Kentucky, Louisiana, Nebraska, New Jersey, New York, Ohio, Pennsylvania, South Carolina, South Dakota, Tennessee, Texas, and Virginia.

2.   1977 - New York repealed the death penalty, Texas switched to lethal injection.

3.   1982 - New Jersey switched to lethal injection.

4.   1983 - Illinois switched to lethal injection. Arkansas introduced choice of lethal injection, lethal gas, or electrocution for inmates sentenced before July 4, 1983, and required lethal injection for those sentenced to death after July 4, 1983.

5.    1984 - South Dakota switched to lethal injection.

6.    1989 - Pennsylvania switched to lethal injection.

7.    1990 - Louisiana switched to lethal injection.

8.    1993 - Ohio introduced choice of lethal injection or electrocution.

9.    1994 - New York reintroduced the death penalty, with the sole means being by lethal injection, Connecticut switched to lethal injection, and Virginia introduced choice of lethal injection or electrocution.

10.   1995 - Indiana switched to lethal injection, and South Carolina introduced choice of lethal injection or electrocution.

11.   1998 - Kentucky introduced choice of lethal injection or electrocution, and Tennessee introduced choice of lethal injection or electrocution.

12.   2000 - Florida introduced choice of lethal injection or electrocution.

13.   2001 - Georgia Supreme Court declared electrocution unconstitutional under state constitution and switched to lethal injection.

14.   2002 - Alabama introduced lethal injection as means of execution.

At the present time, Nebraska is that only State that still maintains electrocution as the sole method of execution.  None of the other States that have adopted the death penalty since 1974 have authorized electrocution as one of the methods of execution.  Electrocution is not authorized as a method of execution for any of the federal death penalty offenses.

M.    *Ground Thirteen: The death penalty itself constitutes cruel and unusual punishment, regardless of the method by which it is carried out, and thus Petitioner's sentence of death violates the Eighth and Fourteenth Amendments to the Constitution.*

The death penalty itself constitutes cruel and unusual punishment when measured against the evolving standards of decency that mark the progress of a maturing society, as expressed in the United States, foreign countries, and international conventions.

N.    *Ground Fourteen:   The sentence of death imposed by the three-judge sentencing panel violates the Sixth, Eighth, and Fourteenth Amendments to the Constitution, because it was imposed without any specific factual findings by the jury as to any statutory aggravating factors or Petitioner's degree of participation in the charged offenses.*

The three-judge sentencing panel sentenced Petitioner to death without any factual findings by the jury as to any statutory aggravating factors or Petitioner's degree of participation in the charged offenses.  The three-judge panel found that the following aggravating factors were present:

1.    The murder was committed in an apparent effort to conceal the commission of a crime, or to conceal the identity of the perpetrator. <u>Neb. Rev. Stat.</u> § 29-2523(1)(b).

2.    At the time the murder was committed, the offender also committed another murder.  <u>Neb. Rev. Stat.</u> § 29-2523(e).

3.    The crime was committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of the laws. <u>Neb. Rev. Stat.</u> § 29-2523(h).

Pursuant to the Sixth, Eighth, and Fourteenth Amendments, Petitioner had a right to have a jury decide whether these aggravating factors had been proven by the State beyond a reasonable doubt.  Petitioner's sentence thus violates the Sixth, Eighth, and Fourteenth Amendments to the Constitution.

O.    *Ground Fifteen: The three judge sentencing panel's reliance upon an alleged aggravating factor that was unconstitutionally vague and overly broad violated Petitioner's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution.*

One of the alleged aggravating factors relied upon by the three-judge sentencing panel was that Petitioner's offense "was committed in an apparent effort to conceal the commission of a crime." <u>Neb. Rev. Stat.</u> § 29-2523(b). This factor, as it was codified at the time of Petitioner's sentencing, was reasonably susceptible to two different interpretations.  On the one hand, the term "apparent" could reasonably be read to mean open to view.  On the other hand, the term "apparent" could reasonably be read to mean something that only appears to be true, as opposed to something that actually is.  Thus, the sentencing panel could have determined that this aggravating factor existed if it found that Petitioner committed the charged offenses in what appeared to be, but actually was not, an effort to conceal the identify of the perpetrator of a crime.

P.   *Ground Sixteen:  The three-judge panel that sentenced Petitioner to death reviewed the proportionality of his sentence in an arbitrary and unreasonable manner, in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution.*

At the time of Petitioner's sentence, Nebraska's death penalty statutes charged the sentencing judge or judges to consider "[w]hether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant."  Neb. Rev. Stat. § 29-2522(3). In considering this factor, Petitioner's three-judge sentencing panel did not consider the sentences of all defendants who had been convicted of similar crimes, but only defendants who had been sentenced to death. This analysis was arbitrary and irrational, and thus violated Petitioner's rights to due process and a fair trial under the Fifth, Sixth, Eighth, and Fourteenth Amendments.

Q.   *Ground Seventeen:  In light of the fact that Nissen was allowed to enter into an agreement taking the death penalty off the table, Petitioner's sentence of death violates the Fifth, Sixth, Eighth, and Fourteenth Amendments' guarantee of proportionality.*

Petitioner's co-defendant, Nissen, was convicted of one count of first degree murder and two counts of second-degree murder in connection with the same deaths.  The three-judge sentencing panel held that there was "no appreciable difference between the degree of culpability" of Nissen and Petitioner. Having been convicted, however, Nissen was given the option of life imprisonment if he would testify against Petitioner.  This option allowed Nissen to avoid the threat of death by electrocution – a cruel and unusual punishment – which he faced if he refused to testify.  Based upon Nissen's testimony, however, which was given under the unconstitutional threat of death by electrocution, Petitioner received a sentence of death.  The disparity in the sentences Nissen and Petitioner received violates the guarantees of due process and proportionality Fifth, Sixth, Eighth and Fourteenth Amendments.

R.   *Ground Eighteen:  To the extent, if any, that Petitioner's post-conviction counsel failed to raise a claim that the prosecutor's failure to disclose exculpatory evidence violated Petitioner's rights under the Due Process Clauses of the Fifth and Fourteenth Amendments, that failure deprived Petitioner of the right to effective assistance of counsel, as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution.*

Petitioner's post-conviction counsel asserted the prosecution's failure to turn over exculpatory evidence as part of Petitioner's claims that his conviction was obtained through the use of Nissen's perjured testimony, in violation of the

Due Process Clauses of the Fifth and Fourteenth Amendments.  This assertion was sufficient to raise and preserve Petitioner's claim that the prosecution's failure to disclose exculpatory evidence, standing alone, violated Petitioner's rights under the Fifth and Fourteenth Amendments.  If, however, the State argues and the Court determines that Petitioner's counsel failed to raise that claim and that his failure has resulted in a procedural default or a failure to exhaust remedies in state court, then the failure of Petitioner's post-conviction counsel to do so deprived Petitioner of the right to effective assistance of counsel, as guaranteed by <u>Neb. Rev. Stat.</u> § 29-3004 (Reissue 1995) and the Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution.

S.      *Ground Nineteen: Because Petitioner is mentally retarded, the Eighth and Fourteenth Amendments to the Constitution forbid the imposition and execution of his sentence of death.*

Petitioner meets the DSM-IV diagnostic criteria for mental retardation and is in fact mentally retarded.  Petitioner's sentence of death thus violates the ban on cruel and unusual punishment contained in the Eighth and Fourteenth Amendments to the Constitution.

15. <u>If any of the grounds listed in 14 A, B, C, or D were not previously presented to the state's highest court, state briefly what grounds were not so presented and give your reasons for not presenting them.</u>

Ground Nineteen has not been presented to the Nebraska Supreme Court because Mr. Lotter's motion to vacate his death sentence under <u>Neb. Rev. Stat.</u> § 28-105.01 is pending in the Richardson County District Court.

16. <u>Do you have any petition, application, motion or other proceeding now pending in any court, state or federal, as to the judgment attacked by this petition?</u>

Yes.

17. <u>If the answer to 16 is YES, please give the following information:</u>

    (a)   <u>Name of court:</u>     Richardson County District Court

    (b)   <u>Nature of proceeding:</u>   Verified Motion to Preclude Imposition of Sentence of Death

    (c)   <u>Date filed:</u>     May 11, 2004

    (d)   <u>Docket number:</u>   Case No. 2682

    (e)   <u>Judge to whom assigned:</u>   Daniel E. Bryan

18. <u>Give the name and address, if know, of each attorney who represented you in the following states of the judgment attacked herein:</u>

    (a)   <u>At preliminary hearing:</u>   Emil "Mike" Fabian & Barbara Theilen
                                       4939 S. 24th St.
                                       P.O. Box 7567
                                       Omaha, NE 68107

    (b)   <u>At arraignment and plea:</u>   Mike Fabian & Barbara Theilen

    (c)   <u>At trial:</u>   Mike Fabian & Barbara Theilen

    (d)   <u>At sentencing:</u>   Mike Fabian & Barbara Theilen

(e)   <u>On appeal:</u>                    James Mowbray & Jerry Soucie
                                          Commission on Public Advocacy
                                          140 North 8<u>th</u> St, Suite 270
                                          P.O. Box 98932
                                          Lincoln, NE 68509

(f)   <u>In any post-conviction proceeding:</u>   James Mowbray & Jerry Soucie

(g)   <u>On post-conviction appeal:</u>       James Mowbray & Jerry Soucie

19.   <u>Were you sentenced on more than one count in the same court and at the same time?</u>   Yes.

Sentenced on three counts of murder and three counts of use of a weapon, plus one count of burglary. The burglary sentence was merged with the sentence for first degree murder.

20.   <u>Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?</u>   Yes (    )   No (   X    )

21.   <u>If the answer to 20 is YES, please give the following information:</u>

(a)   <u>Name and location of the court which imposed the sentence and to be served in the future:</u>

(b)   <u>Date and length of the sentence:</u>

(c)   <u>Have you filed, or do you plan to file any action attacking the judgment which imposed the sentence to be served in the future?</u>

Not applicable.

WHEREFORE, Petitioner respectfully requests that the Court grant his Petition for a Writ of Habeas Corpus, vacate the sentence of death imposed by the three-judge sentencing panel, and order Petitioner released from prison, unless the State of Nebraska provides Petitioner a new trial that complies with the Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution and imposes a legal sentence after issuance of the writ.

Dated this 12th day of April, 2005.

JOHN L. LOTTER, Petitioner

By:    Andre R. Barry, # 22505
abarry@clinewilliams.com
CLINE, WILLIAMS, WRIGHT,
JOHNSON & OLDFATHER, L.L.P.
1900 U.S. Bank Building
233 South 13th Street
Lincoln, NE 68508
(402) 474-6900

By:     /s/ Andre R. Barry

- and -

By:    Sean J. Brennan, # 15841
sbrennan@alltel.net
BRENNAN & NIELSEN LAW
OFFICES, P.C.
140 North 8th Street, # 340
Lincoln, NE 68508
(402) 441-4848

By:     /s/ Sean J. Brennan
Sean J. Brennan

## DECLARATION OF PETITIONER

I declare under penalty of perjury under the laws of the United States

that the facts set forth in the foregoing Amended Petition are true and correct.

Executed this ____ day of April, 2005.

John L. Lotter

Dated this 12th day of April, 2005.

JOHN L. LOTTER, Petitioner

By:   Andre R. Barry, # 22505
abarry@clinewilliams.com
CLINE, WILLIAMS, WRIGHT,
JOHNSON & OLDFATHER, L.L.P.
1900 U.S. Bank Building
233 South 13th Street
Lincoln, NE 68508
(402) 474-6900

By:   _____

- and -

By:   Sean J. Brennan, # 15841
sbrennan@alltel.net
BRENNAN & NIELSEN LAW
OFFICES, P.C.
140 North 8th Street, # 340
Lincoln, NE 68508
(402) 441-4848

By:   _____
Sean J. Brennan

## DECLARATION OF PETITIONER

I declare under penalty of perjury under the laws of the United States

that the facts set forth in the foregoing Amended Petition are true and correct.

Executed this ____ day of April, 2005.

_____
John L. Lotter

## CERTIFICATE OF SERVICE

I, Andre R. Barry, hereby certify that on April 12, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Sean J. Brennan and J. Kirk Brown.

/s/ Andre R. Barry
Andre R. Barry