IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JOHN L. LOTTER, ) | 4:04CV3187 |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | MEMORANDUM AND ORDER |
| ) | |
| ROBERT HOUSTON, Warden, ) | |
| Tecumseh State Correctional Center, ) | |
| ) | |
| Respondent. ) | |
| ) | |

John L. Lotter (Lotter) has filed a Motion to Alter or Amend Judgment (filing no. 85) under Rule 59 of the Federal Rules of Civil Procedure. That motion will be denied.

## BACKGROUND

Lotter attacks my ruling regarding ground six of the Corrected Second Amended Petition for Writ of Habeas Corpus. (Filing no. 86 (brief).) On March 18, 2011, I ruled as follows regarding that claim:

> *Ground Six: The prosecutor's misconduct in knowingly using Nissen's perjured testimony to obtain Petitioner's conviction violated Petitioner's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution.*
>
> Lotter's claim six is nearly identical to claim two regarding "knowing" use of perjured testimony. As indicated in the discussion of claim two, in 2009, after several prior postconviction actions, the Nebraska Supreme Court found that claim had been procedurally defaulted, there is nothing to refute that analysis, and the default has not been excused. On those same grounds, claim six is denied.

(Filing no. 83 at CM/ECF p. 51.)

As noted, there was a similarity between ground six and ground two. Regarding ground two, I ruled, in part, as follows:

> *Ground Two: The prosecution's use of Nissen's perjured testimony to obtain Petitioner's conviction and sentence of death, and the state's failure to correct that conviction and sentence, violate Petitioner's rights under the Fifth, Eighth, and Fourteenth Amendments to the Constitution.*
>
> Initially, to the extent that this claim is predicated upon the assertion that the prosecutors *knew or should have known* that Nissen perjured himself at or near the time that Nissen testified, the Nebraska Supreme Court held in 2009 that such a claim was procedurally barred because it could have been asserted during the direct appeal or in the several postconvictions which predated the 2008 postconviction action in which the claim was presented. That is:
>
>> [T]he recently discovered recantation by Nissen is in no way probative of whether the State knew or should have known Nissen's testimony was perjured at the time of Lotter's trial or whether it failed to disclose exculpatory evidence with regard to Nissen's testimony. In fact, Lotter's allegation that the State knew or should have known of Nissen's perjury at the time of trial stems not from the recantation affidavit, but from information known to the State that Nissen had lied several times in the past and had refused the State's request that he take a lie detector test before testifying.
>>
>> The problem is that Lotter fails to allege that this evidence was unavailable before any of the numerous challenges already made to his convictions and sentences. None of the facts alleged in the current motion could prove the State knowingly used perjured testimony against Lotter.

> And, even assuming that a due process claim can rest on the State's negligent failure to know that testimony is perjured, Lotter is procedurally barred from raising his current allegations.

*Lotter,* 771 N.W.2d at 561 (footnote omitted).

I find nothing to refute the foregoing analysis. Accordingly, I find and conclude that Lotter has procedurally defaulted the claim that the prosecutors knew or should have known that Nissen perjured himself at or about the time Nissen testified.

I also find and conclude that Lotter has not excused the procedural default. In particular, he has shown neither "cause" nor "prejudice" and he has certainly not shown that he is actually innocent even if one assumes that Nissen did in fact perjure himself as to who shot the victims. Importantly, Nissen did not recant all of his testimony. Even though Nissen recanted the assertion that Lotter shot the victims, Nissen did not recant the other portions of his testimony which directly inculpated Lotter (such as by participating in the planning, acquiring the murder weapons, traveling with Nissen to the scene of the murders, and participating in the creation of alibis) in the three murders and made Lotter jointly responsible.

As the Nebraska Supreme stated regarding the issue of actual innocence,

> Nothing in the allegations presented by the postconviction motion, even if true, refutes the evidence at trial that Nissen and Lotter, wearing gloves, traveled to Lambert's house in order to kill Brandon and anyone else they found there. The recantation does not refute the evidence that Lotter stole the gun used to murder the victims and that Lotter obtained the knife and the gloves worn during the crimes. It does not refute the testimony of a witness that on the evening of the murders, Lotter told the witness he desired to kill someone and that after the murders, Lotter sought to obtain an alibi. As we indicated in Lotter's

-3-

> appeal from the denial of his motion for DNA testing, because of the joint participation in the felony and the reckless indifference to human life, it is irrelevant to the degree of culpability by whose hand the victims actually died. And certainly, determination of this question does not make a showing of actual innocence of the crimes for which Lotter was convicted and sentenced. As such, postconviction relief based upon Nissen's recent recantation was properly denied without an evidentiary hearing.

*Id.* at 564 (footnote omitted).

(Filing no. 83 at CM/ECF p. 37-39 (emphasis in original).)

### *LOTTER'S PRIMARY RULE 59 ARGUMENT*

Lotter's primary argument is that there was no procedural default because he presented ground six to the Nebraska Supreme Court in the 1999 postconviction actions when he presented the affidavit of Nissen's cell mate Jeff Haley. Haley's affidavit asserted that while they were celled together, Nissen told Haley that he, not Lotter, fired the shots that killed the three victims.

To be specific, Lotter argues that "Petitioner asserted the claim that the prosecution had knowingly used Nissen's perjured testimony in his very first postconviction action." (Filing no. 86 at CM/ECF p.4.[1]) Lotter continues, claiming that he "specifically cited that evidence on appeal to the Nebraska Supreme Court, . . . including the following:

- Nissen had previously been charged and convicted for falsely implicating another person in a crime.
- Nissen's step-mother had warned the prosecutors that Nissen was a 'thief, liar and con-artist' and 'He'll fake, he's smart to make up

---

[1]Lotter cites filing no. 50-30 at CM/ECF pp. 91-94 in support of this assertion.

-4-

>   stories, he manipulates & he's a GOOD LIAR & is good at making others think he's telling the truth.'
>
> • Nissen refused to take a polygraph test to confirm whether his version of events was the truth."

(Filing no. 86 at CM/ECF pp. 4-5.[2])

### *ANALYSIS*

Lotter's argument–that there was no procedural default–is premised on the implicit assumption that he was privileged to make a claim regarding the knowing use of Nissen's alleged perjury (1) in a piecemeal fashion and in successive postconviction actions (2) while ignoring his obligation to present the claim on direct appeal. Of course, that is not the law in Nebraska and that is not the federal law either. *See, e.g.,* the discussion of "procedural default" in the original decision denying habeas relief. (Filing no. 83 at CM/ECF pp. 27-31.)

Lotter presented a claim to the Nebraska Supreme Court in his first postconviction action[3] that the prosecution knew (or should have known) at the time of trial that Nissen was lying. That claim was based upon the affidavit of Nissen's former cell mate, Haley, *plus* other facts such as (1) the prosecutor knew that Nissen had falsely implicated another person in an unrelated crime, (2) the prosecutor knew that Nissen's stepmother thought Nissen was a liar, and (3) the prosecutor knew that Nissen would not take a polygraph as condition of his cooperation agreement.

---

[2]Lotter cites filing no. 50-8 at CM/ECF pp. 9-11 in support of this assertion.

[3]There were actually several postconviction actions that were consolidated into one, and that consolidated matter was the first of Lotter's several postconviction actions. All together, Lotter filed four discrete postconviction actions.

The Nebraska Supreme Court ruled that Haley's affidavit was inadmissible under the Nebraska Rules of Evidence because there were no corroborating circumstances that clearly indicated the cell mate's statement was trustworthy. Importantly, the Nebraska Supreme Court also decided that Lotter's claim of knowing use of perjured testimony was procedurally defaulted because the "plus" factors that allegedly would have tipped off the prosecutor–that Nissen had falsely implicated another person in an unrelated matter, and so forth–"*would have been equally known to Lotter at the time of trial and on direct appeal.*" State v. Lotter, 664 N.W.2d 892, 911 (Neb. 2003) (emphasis added).[4] In that regard, the Nebraska Supreme Court reiterated that a "motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal. *State v. Curtright*, 262 Neb. 975, 637 N.W.2d 599 (2002)." *Id.* The Court therefore "conclude[d] that there is no competent evidence to support Lotter's postconviction claim that the State knowingly used perjured testimony against him at trial." *Id.*

When Lotter brought his fourth postconviction action alleging once again the knowing use of Nissen's alleged perjury, based upon Nissen's affidavit together with the "plus" factors that had been rejected in the first postconviction action as procedurally defaulted, the result, not surprisingly, was the same. That is:

---

[4]Lotter does not challenge this finding by the Nebraska Supreme Court in his Rule 59 motion. Even if he did, that finding is entitled to AEDPA deference since it led to the Nebraska Supreme Court's decision on the merits that there "is no competent evidence" to support Lotter's claim. *See, e.g.,* the discussion of "AEDPA deference" in the original decision denying habeas relief. (Filing no. 83 at CM/ECF pp. 31-33.) Moreover, to the extent that Lotter claims this "plus" evidence was *not* available to him, despite the decision of the Nebraska Supreme Court to the contrary, because the prosecution did not disclose it in violation of *Brady* and *Giglio*, that claim has also been procedurally defaulted. (Filing no. 83 at CM/ECF pp. 52-53.) In fact, Lotter's state postconviction counsel repeatedly told the district court that he was not asserting "a direct Brady problem" and "I'm not talking about Brady." (Filing no. 83 at CM/ECF p. 52 (citing filing no. 59-4 at CM/ECF p. 41).

> [T]he recently discovered recantation by Nissen is in no way probative of whether the State knew or should have known Nissen's testimony was perjured at the time of Lotter's trial or whether it failed to disclose exculpatory evidence with regard to Nissen's testimony. In fact, Lotter's allegation that the State knew or should have known of Nissen's perjury at the time of trial stems not from the recantation affidavit, but from information known to the State that Nissen had lied several times in the past and had refused the State's request that he take a lie detector test before testifying.
>
> The problem is that Lotter fails to allege that this evidence was unavailable before any of the numerous challenges already made to his convictions and sentences. None of the facts alleged in the current motion could prove the State knowingly used perjured testimony against Lotter. And, even assuming that a due process claim can rest on the State's negligent failure to know that testimony is perjured, Lotter is procedurally barred from raising his current allegations.
>
> The need for finality in the criminal process requires that a defendant bring all claims for relief at the first opportunity. Therefore, it is fundamental that a motion for postconviction relief cannot be used to secure review of issues which were known to the defendant and could have been litigated on direct appeal. Similarly, an appellate court will not entertain a successive motion for postconviction relief unless the motion affirmatively shows on its face that the basis relied upon for relief was not available[5] at the time the movant filed the prior motion. *On its face, Lotter's motion for postconviction relief failed to affirmatively show that he could not have raised these issues either on direct appeal or during prior motions for new trial and postconviction relief.*

---

[5]In a brief in support of a motion for rehearing regarding the fourth postconviction action, Lotter admitted that "he does *not* allege that the second category of evidence [the 'plus' factors] was previously unavailable." (Filing no. 53-6 at CM/ECF p. 9 (emphasis added).)

*State v. Lotter,* 771 N.W.2d 551, 561 (Neb. 2009) (footnotes and citations omitted) (emphasis added).

In summary, the Nebraska courts have taken seriously their obligation to give Lotter a full and fair opportunity to present his claim that the prosecution knew, or should have known, at the time of trial that Nissen was lying. Lotter is not, however, entitled to present serial iterations of this claim by evading long-standing and consistently employed rules that seek to promote the finality of criminal judgments. Lotter defaulted the claim that the prosecutor knew or should have known at the time of trial that Nissen was lying, and that default has not been excused by a showing of actual innocence or otherwise. In short, the Rule 59 motion will be denied because my original decision was correct.[6]

IT IS ORDERED that the petitioner's Motion to Alter or Amend Judgment (filing no. 85) is denied.

DATED this 25th day of April, 2011.

BY THE COURT:

*Richard G. Kopf*
United States District Judge

---

[6]Only the argument discussed in the text warrants discussion. That said, I have considered every argument advanced by Lotter in support of his Rule 59 motion and I reject them all because they have no merit.

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.