IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JOHN L. LOTTER, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | )   No. 4:04-CV-03187-RGK |
| | ) |
| SCOTT FRAKES, Director, | ) |
| Nebraska Department of | ) |
| Correctional Institutions | ) |
| | ) |
| Respondent. | ) |

## PETITIONER'S MOTION TO STAY HABEAS PROCEEDINGS PENDING STATE COURT REMEDIES

Petitioner John L. Lotter, through undersigned counsel, respectfully moves this Court to stay the federal habeas proceedings pending the Nebraska state court's resolution of Mr. Lotter's Motion for Postconviction Relief following changes in federal constitutional law. The state court pleading presents two claims: (1) the recent United States Supreme Court decision in *Hurst v. Florida*, 136 S.Ct. 616 (2016) invalidates Mr. Lotter's death sentence because Nebraska's capital sentencing scheme requires a judge, not a jury, to make the findings of fact necessary to impose a sentence of death, and does not require that those factual findings be made unanimously and beyond a reasonable doubt; and (2) death qualification of Mr. Lotter's jury, who had no role in the determination of punishment in the event they found him guilty, violated Mr. Lotter's rights under

1

the Eighth and Fourteenth Amendments because it undermined the reliability of the jury's factfinding role and denied him a fair trial. A copy of the state court pleading is attached to this motion as Exhibit 1.

A grant of relief in state court would vacate Mr. Lotter's convictions and/or death sentences. Mr. Lotter's federal habeas petition seeks the same aim, and is filed to preserve his issues in compliance with the time bar arising from the Supreme Court's decision in *Hurst v. Florida*, *supra*, and also raises claims under 28 U.S.C. § 2244(d)(1)(C). The Court should temporarily stay the federal habeas proceedings in the interests of judicial economy, comity, and fairness to the parties.

## **Introduction**

This is a capital habeas proceeding brought by a Nebraska state prisoner. Mr. Lotter's conviction became final on June 7, 1999, when the United States Supreme Court denied his petition for writ of certiorari. *Lotter v. Nebraska*, 526 U.S. 1162 (1999). Mr. Lotter sought postconviction relief in state court, which was denied by the Richardson County District Court; the Nebraska Supreme Court affirmed. *State v. Lotter*, 266 Neb. 245 (2003). On May 11, 2004, Mr. Lotter filed an initial federal habeas petition with this Court. On March 18, 2011, the Court denied relief. *Lotter v. Houston*, 771 F. Supp. 2d 1074 (2011). The Court of Appeals for the Eighth Circuit denied his application for a certificate of appealability.

A significant change in federal constitutional law since the earlier litigation, notably *Hurst v. Florida*, 136 S.Ct. 616 (2016), paints Mr. Lotter's case, and his claims, in a different light. Mr. Lotter now seeks a stay and abeyance pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005). This Court should stay the instant federal habeas proceeding pending the related state court litigation.

I. **A *Rhines* stay is appropriate while Mr. Lotter litigates his Sixth and Eighth Amendment claims in state court, aided by the Supreme Court's recent opinion in *Hurst v. Florida*.**

A *Rhines* stay is proper where a petitioner has good cause for the failure to present his claims in state court, where the unexhausted claims are potentially meritorious, and where the petitioner is not engaging in abusive litigation tactics or intentional delay. *Rhines*, 544 U.S. at 277-78; *Howard v. Norris*, 616 F.3d 799, 801 (8th Cir. 2010); *Franklin v. Kohler*, No. 4:11-CV-934 (CEJ), 2013 WL 3835824, at *3-*4 (E.D. Mo. July 24, 2013).

Nebraska's capital sentencing scheme provides that a judge, not a jury, find each fact required to impose a death sentence. *See* Neb. Rev. Stat. § 29-2520-§ 29-2525. The maximum sentence a capital defendant can receive based on the jury's verdict alone is life imprisonment. A death sentence cannot be imposed under the Nebraska capital sentencing scheme unless one or more aggravating circumstances is found to exist beyond a reasonable doubt, and unless the following findings of

3

fact are made alone by a judge or three-judge panel in "fix[ing] the sentence at either death or life imprisonment":

> (1) Whether the aggravating circumstances as determined to exist justify imposition of a sentence of death;
>
> (2) Whether sufficient mitigating circumstances exist which approach or exceed the weight given to the aggravating circumstances; or
>
> (3) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

Neb. Rev. St. § 29-2522.[1] Absent these findings, the sentence is life imprisonment. The findings required under § 29-2522 are literally "necessary to impose a sentence of death." *Hurst*, *supra*, 136 S.Ct. at 619. The statute is silent as to what standard of proof is to be used in making these determinations, and whether unanimity among the three-judge panel is required.

In Mr. Lotter's case, a three-judge panel, including the trial judge, was convened February 1996 to determine whether Mr. Lotter should be sentenced to death or life imprisonment. After hearing the evidence, the three-judge panel found the applicability of three aggravating circumstances beyond a reasonable doubt under Neb. Rev. Stat. § 29-2523. Appendix A, Tr. Bill of Exceptions Vol. XX1 at

---

[1] Under the version of the statute in effect at the time of Mr. Lotter's sentencing, these findings, as well as the findings as to the existence of aggravating circumstances, were made either by the trial judge, or by a three-judge sentencing panel. *See State v. Gales*, 265 Neb. 598, 606-607, 658 N.W.2d 604 (2003)

3923-28. The panel also found the existence of the mitigating circumstance that, "at the time of the crime, the capacity of the defendant to appreciate the wrongfulness of his or her conduct or to conform his or her conduct to the requirements of law was impaired as a result of mental illness, mental defect, or intoxication," and that it had given evidence of non-statutory mitigating circumstances "such weight, if any, to which it is entitled." Appendix A, Tr. Bill of Exceptions Vol. XXI at 3936-38, 3940.[2]

    The three-judge panel then proceeded to make the factual findings under Neb. Rev. Stat. § 29-2522(1)-(3), determining that Mr. Lotter should be sentenced to death. Tr. Bill of Exceptions Vol. XXI at 3955-58. The panel made these findings without applying any burden of proof or unanimity, except that the panel did conclude beyond a reasonable doubt that the death sentence was not disproportionate to the sentence imposed in similar cases, despite expressly finding

---

[2] The panel recited the evidence of non-statutory mitigating circumstances, as follows: "[H]is serious medical, psychiatric problems; the quote, cognitive defects, learning disabilities and educational deficiencies, closed quotes, from which he suffered; his turbulent family history and an exceptionally unhappy and unstable childhood; the lack of a relationship with his father and the separation from his mother at an early age; his removal from the home in second grade; his infrequent contacts with his siblings and other family members after that time; suffering ridicule and rejection by his peers; his placement in group homes, foster care, psychiatric hospitals, and the Youth Development Center at Kearney; being sent to the state penitentiary at the age of 16; and his feeling of being unwelcome in the small community of Falls City, which he considered home. The defendant further calls our attention to the fact that several witnesses testified that he tried very hard to overcome the many problems he faced and despite his efforts, and the assistance provided by the educational and mental health professionals, he consistently failed." Tr. Bill of Exceptions Vol. XXI at 3938-39.

no appreciable difference in the degree of culpability between Mr. Lotter and his co-defendant Marvin Nissen, who was sentenced to life.

This process contravenes *Hurst v. Florida*, 136 S. Ct. 616 (2016). In that recently decided case, the United States Supreme Court held that "[t]he Sixth Amendment requires a jury, not a judge, to find *each fact necessary* to impose a sentence of death." *Hurst*, 136 S.Ct. at 619 (emphasis added). Acknowledging its prior decisions in *Spaziano v. Florida*, 468 U.S. 447 (1984) and *Hildwin v. Florida*, 490 U.S. 638 (1989) (*per curiam*) that "the Sixth Amendment does not require that the specific findings authorizing the imposition of a death sentence be made by a jury" (*id*. at 623 (quoting *Hildwin*, 490 at 640-641)), the Supreme Court found their conclusion in those cases was "wrong, and irreconcilable with *Apprendi* [*v. New Jersey*, 530 U.S. 466 (2000)]." *Id. See Apprendi*, 530 U.S. at 490, 494 (holding that the Sixth Amendment and Due Process require that any fact exposing the defendant to a greater punishment than that authorized by the jury's verdict is an "element" that "must be submitted to a jury, and proved beyond a reasonable doubt"). Because "[t]ime and subsequent cases have washed away the logic of *Spaziano* and *Hildwin*," the Court overruled those cases in pertinent part, and abrogated their reasoning. *Id*. at 624.

Mr. Lotter was sentenced to death without a jury finding unanimously and beyond a reasonable doubt the facts necessary to impose the death penalty, and his

6

death sentence are unconstitutional and void as a result. Because the process necessary for the constitutional imposition of a death sentence did not occur in Mr. Lotter's case, he now seeks a *Rhines* stay for the opportunity to resolve his newly-supported claims in state court. Mr. Lotter is not engaging in intentional delay, and he had good cause for not raising the issue sooner in state court. *See Rhines*, 544 U.S. at 277-78.

Because the Supreme Court decided *Hurst* in 2016, Mr. Lotter was unable to make this argument on direct appeal or postconviction review. Indeed, the Nebraska Supreme Court determined that the judge-made findings necessary to a death sentence under Neb. Rev. Stat. § 29-2522 did not violated the Sixth Amendment right to a jury trial in *State v. Gales*, 265 Neb. 598, 265 Neb. at 628-629 (2003) (citing, *inter alia*, *Hildwin*, *supra*, 490 U.S. 638; *Spaziano*, *supra*, 468 U.S. 447), a decision now abrogated by *Hurst*. The similar capital sentencing schemes in both Florida and Delaware have each been struck down by their respective state supreme courts in the wake of *Hurst*. *See Hurst v. State*, 202 So.3d 40, 53 (Fla. 2016); *Rauf v. State*, 145 A.3d 430 (Del. 2016) (*per curiam*). *See also Powell v. State*, ___ A.3d ___, 2016 WL7243546 (Del. 2016) (holding that its decision in *Rauf v. State* is retroactive to all persons on Delaware's death row). A stay would conserve the Court's resources while minimizing or potentially avoiding altogether its inherently intrusive reexamination of a final state court

7

judgment. *See McCleskey v. Zant*, 499 U.S. 467, 491 (1991) ("Reexamination of state convictions on federal habeas frustrates both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights."). The requested stay serves the interests of comity and federalism, and it is justified whether or not the claim's posture is identical to that in *Rhines*. *See Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005) (suggesting that the *Rhines* stay-and-abeyance procedure applies outside the context of mixed petitions).

Mr. Lotter's *Hurst* claim is also potentially meritorious. *See Rhines*, 544 U.S. at 277. A return to state court would not be futile because the Nebraska Postconviction Act is the primary procedure for bringing collateral attacks on final judgments in criminal cases base on constitutional principles, and is the sole remedy in Nebraska for bringing such claims. *State v. Smith*, 288 Neb. 797, 851 N.W.2d 665 (2014). Nebraska has afforded retroactive application to new rules of constitutional law that fit within the definitions of both substantive rules and watershed rules of criminal procedure under *Teague v. Lane*, 489 U.S. 288 (1989). *State v. Mantich*, 287 Neb. 320, 341-342, 842 N.W.2d 716 (2014) (holding *Miller v. Alabama*, 132 S.Ct. 2455 (2012), applies retroactively to cases on collateral review). *Hurst* fits squarely within the same analytical framework. It is likely, then, that the Nebraska state courts would give the same retroactive reach to *Hurst*. Because a jury did not make the findings necessary to impose a death sentence on

8

Mr. Lotter, unanimously and beyond a reasonable doubt, his claim in state court is "potentially meritorious."

## II. A *Rhines* stay is appropriate on Mr. Lotter's claim that death qualification of his jury, whose only role was to determine whether he was guilty or innocent, violated his rights under the Eighth and Fourteenth Amendments.

Similarly, Mr. Lotter is not engaging in intentional delay and has good cause for not having yet litigated his voir dire issue in state court. During voir dire, prospective jurors were told that the death penalty was a possible punishment against Mr. Lotter, but at the same time were told that they had to decide his guilt without considering the possibility that a death sentence would be imposed against him. Appendix C-1, Tr. Bill of Exceptions Vol. VIII at 1521. Each prospective juror was also asked some variation of questions concerning 1) whether they had any personal or religious beliefs that would prevent them from finding Mr. Lotter either guilty or not guilty, and 2) whether they felt their views on the death penalty would keep them from sitting as an impartial juror. *See generally* Appendix C-1, Tr. Bill of Exceptions Vol. VIII at 1562-63, 1594, 1630; Appendix C-2, Vol. IX at 1729, 1737-38, 1777-78, 1801-02, 1819, 1890-91, 1921, 1958-59.

Prior to Mr. Lotter's trial, his counsel moved to preclude death qualification of prospective jurors during voir dire. Counsel conceded that both the language of Neb. Rev. Stat. § 29-2006(3) as well as decisions of the U.S. Supreme Court and the Nebraska Supreme Court allowed death qualification of the jury, but argued

9

that the statute was unconstitutional on its face and as applied to Mr. Lotter. The trial court summarily overruled the motion. Appendix B, Tr. Bill of Exceptions Vol. VII at 1465. While Mr. Lotter's trial counsel preserved the issue, it was not raised either on direct appeal or in postconviction. The same counsel represented Mr. Lotter both on his direct appeal and in his state postconviction proceedings. *See State v. Lotter*, *supra*, 255 Neb. 456; *State v. Lotter*, *supra*, 266 Neb. 245.

      This claim is also potentially meritorious. Indeed, the claim is illuminated by the recent decision in *Hurst*. Even though the jury has no role in capital sentencing, the process of death qualification is permitted in Nebraska to allow the prosecution to question prospective jurors in order to exclude persons from the jury who are opposed to the death penalty. Neb. Rev. Stat. § 29-2006(3). This is allowed under the presumption that such jurors may be biased against guilt and so their views on capital punishment are relevant (*State v. Rust*, 223 Neb. 150, 166-167, 388 N.W.2d 483 (1986)); and yet, it is not permissible under this same process to allow the defense to question jurors in order to exclude persons from the jury who are in favor of the death penalty and may be biased *in favor of* guilt. Rather, such jurors are presumed to be impartial and so their views on capital punishment are deemed irrelevant. *State v. Galindo*, 278 Neb. 599, 641-642, 643, 774 N.W.2d 190 (2009). This is fundamentally unfair, and creates an unacceptable risk of empaneling a jury unquestionably shown to skew towards the prosecution, and towards guilt. The

process of death qualification in Nebraska is thus not only antithetical to its stated purpose of ensuring an impartial jury, it also runs counter to the Nebraska Supreme Court's express determination that "with the death penalty, we have taken, and should continue to take, the extra step -- indeed walk the extra mile -- to ensure fairness and accuracy in cases involving the death penalty." *Reeves*, 258 Neb. 511, 534, 604 N.W.2d 151 (2000) (internal quotation omitted).

The State's ostensive justification for the practice of death qualification in Nebraska is to prevent juror nullification of a guilty verdict because of scruples against the death penalty. *State v. Rust*, *supra*, 223 Neb. at 166-167. But if there is any problem, it is one of the State's own making. There is no issue of jury nullification if the State does not unnecessarily and irrationally inform jurors about a potential death sentence should they find the defendant guilty. The State cannot insist that it upheld Mr. Lotter's constitutional rights to a fair and reliable trial while it demanded procedures irrelevant to the jury's factfinding role but known to tilt the jury towards the prosecution. *See Glossip v. Gross*, 135 S.Ct. 2726, 2758 (2016) (Breyer, J., dissenting) (citing Rozelle, *The Principled Executioner: Capital Juries' Bias and the Benefits of True Bifurcation*, 38 ARIZ. ST. L.J. 769 (2006); Note, *Mandatory Voir Dire Questions in Capital Cases: A Potential Solution to the Biases of Death Qualification*, 10 ROGER WILLIAMS UNIV. L. REV. 211, 214-223 (2004)). The State could not have it both ways consistently with constitutional

11

requirements: It could not insist on a judge-only death sentencing scheme in violation of Mr. Lotter's constitutional rights to a jury determination of all the facts necessary to imposition of a death sentence, unanimously and beyond a reasonable doubt, and then set out to deny him a fair and reliable trial by insisting on death qualifying a jury whose only role was to determine whether he was guilty or innocent.

 Mr. Lotter has amply shown good cause warranting a stay and abeyance pending exhaustion of his federal claims in state court. *Rhines*, *supra*. Although a *Rhines* stay is appropriate, this Court may alternatively issue a stay in in the interest of comity subject only to an abuse of discretion standard. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); *Lunde v. Helms*, 898 F.2d 1343, 1345 (8th Cir. 1990) ("[W]e hold the district court did not clearly abuse its discretion in staying the federal case pending resolution of the on-going state proceedings. In our view, this is a matter of docket management."). It is squarely within this Court's discretion to refrain from adjudicating Mr. Lotter's claims so as to permit the State of Nebraska a reasonable period of time to address them. A stay would further the interests of comity and, if the state court litigation is resolved favorably to Petitioner, render moot several of

the claims currently pending before this Court.

WHEREFORE, for all the foregoing reasons, Petitioner respectfully requests that this Court grant his motion to stay the instant federal habeas corpus proceedings and hold them in abeyance pending the resolution of Petitioner's state court remedies.

Respectfully submitted,

/s/REBECCA E. WOODMAN
Rebecca E. Woodman
Attorney at Law, L.C.
P.O. Box 14951
12006 W. 82nd Ter.
Lenexa, Kansas  66215
(785) 979-3672
*rewlaw@outlook.com*

/s/JESSICA E. SUTTON
Attorney at Law
30 S. Potomac Street
Baltimore, Maryland 21224
(208) 503-9381
*jess.el.sutton@gmail.com*

*Counsel for Petitioner*

## CERTIFICATE OF SERVICE

      I hereby certify that on January 12, 2017, the foregoing was filed electronically with the Clerk of the Court via CM/ECF to be served on the following persons authorized to be noticed:

J. Kirk Brown
John C. Bruning
Attorney General's Office
2115 State Capitol Building
Lincoln, NE 68509

                                                      /s/Rebecca E. Woodman
                                                      REBECCA E. WOODMAN
                                                      *Counsel for Petitioner*